IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUI TONG, WEIJIAN TANG, | : | |
| YA-TANG CHI a/k/a/ Tom Chi, | : | |
| CHUAN GENG, | : | CIVIL ACTION |
| KUN YANG, and | : | |
| JUNYI XIE | : | NO. 17-1073 |
| *on behalf of themselves and* | : | |
| *others similarly situated* | : | |
| v. | : | |
| | : | |
| HENDERSON KITCHEN INC. | : | |
| d/b/a Pinwei Restaurant, | : | |
| CHAO HSIUNG KUO | : | |
| a/k/a Gary Kuo, and | : | |
| YENG-LUNG KUO | : | |

**MEMORANDUM**

**SURRICK, J.**                                                **OCTOBER  12 , 2018**

Presently before the Court is Defendants' Motion to Dismiss Counts I, II, V, VI, and VII of Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 18.)  For the following reasons, Defendants' Motion will be granted in part and denied in part.

## I.      BACKGROUND

Plaintiffs Rui Tong, Weijian Tang, Ya-Tang Chi, Chuan Geng, Kun Yang, and Junyi Xie filed this putative collective and class action against Defendants Henderson Kitchen Inc. d/b/a Pinwei Restaurant, Chao Hsiung Kuo, and Yeng-Lung Kuo, alleging that Defendants' employee compensation practices violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§  201-219; the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. §§ 333.101-333.115; and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. Ann. §§ 260.1-260.45.

**A.      Factual Background**

Plaintiffs and the putative collective class they seek to represent are employees and/or former employees of the Pinwei Restaurant in King of Prussia, Pennsylvania.  (Am. Compl. ¶¶ 9-14, ECF No. 17.)  Plaintiffs allege that Defendants Chao Hsiung Kuo and Yeng-Lung Kuo are the "boss" and "lady boss," respectively, of Pinwei, and that they:  (1) have the power to hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment of employees, and (4) maintain employee records.  (*Id.* ¶¶ 18-19, 23-24.)

Tong alleges that during his employment as a waiter at Pinwei from January 1, 2015 to the present, he worked an average of approximately 65.5 hours per week and was paid $700 every week.  (*Id.* ¶¶ 40-42.)

Tang alleges that during his employment as a waiter at Pinwei from January 23, 2015 to August 31, 2015, he worked an average of approximately 65.5 hours per week and was paid $1,500 every half a month.  (*Id.* ¶¶ 56-58.)

Chi alleges that during his employment as a waiter at Pinwei from January 11, 2014 to March 30, 2014, from May 1, 2014 to July 31, 2014, and from December 23, 2014 to March 1, 2015, he worked an average of approximately 65.5 hours per week.  (*Id.* ¶ 71-74.)  Chi alleges that he was paid $1,400 every half month during his first period of employment at Pinwei, $1,500 during his second, $1,650 during his third, and $1,750 during his fourth and final period of employment.  (*Id.* ¶¶ 75-78.)

Geng alleges that during his employment as a busser at Pinwei from January 31, 2015 to August 21, 2015, and as a waiter from September 11, 2015 to July 21, 2016, he worked an

average of approximately 65.5 hours per week. (*Id.* ¶¶ 90-92.) Geng alleges that he was paid

the following amounts every half a month: $900 from January 31, 2015, to February 28, 2015;

$1,100 from March 1, 2015, to April 30, 2015; $1,650 from May 1, 2015, to August 21, 2015;

and $1,750 from December 23, 2015, to March 1, 2016.[1] (*Id.* ¶¶ 93-98.)

Yang alleges that during his employment as a waiter at Pinwei from August 15, 2015 to

July 22, 2016, he worked approximately 65.5 hours per week and was paid, "on average," $1,600

on the first and sixteenth of each month. (*Id.* ¶¶ 110-116.)

Xie alleges that during his employment as a "miscellaneous worker" at Pinwei from

September 15, 2015 to September 30, 2015, and from October 5, 2015 to October 21, 2015, he

worked an average of approximately 66 hours per week and was paid $80 for each day of work.

(*Id.* ¶¶ 128-132.) Xie also alleges that he was promised $90 per day for his October 2015 work

period, but was only paid $80 per day. (*Id.* ¶ 133.)

The Amended Complaint also makes a number of allegations both individually and

collectively. Plaintiffs allege that Defendants failed to pay Geng, Xie, and similarly situated

employees the statutory minimum wage for each hour worked. (*Id.* ¶¶ 32, 152, 158-59.) Each of

the waiter-plaintiffs alleges that Defendants illegally retained their tips. (*Id.* ¶¶ 52-54, 68-70, 87-

89, 107-09, 125-27.) The waiter-Plaintiffs also allege that they were required to perform non-

tipped work for over 20% of the workday, including custodial and delivery duties. (*Id.* ¶¶ 30-31,

44, 60, 80, 100, 118.) Plaintiffs allege that their tips were used by Defendants to pay non-tipped

employees, including hosts and cashiers. (*Id.* ¶¶ 2-4.) All Plaintiffs allege that they were not

informed of their hourly pay rate, any tip deductions Defendants were taking from them, and

whether Defendants were taking a tip credit to go towards satisfying the minimum wage

---

[1] The actual dates listed in the Amended Complaint for this last period are December 23, 2014, to March 1, 2015, which appears to be a typographical error. (Am. Compl ¶ 98.)

requirement.  (*Id.* ¶¶ 4, 36-37, 53-54, 69-70, 88-89, 108-09, 126-27.)  Plaintiffs also allege that Defendants intentionally failed to keep accurate records of their hours and wages, intentionally failed to provide Plaintiffs with any earnings statements, and intentionally denied them any overtime pay.  (*Id.* ¶¶ 33, 35, 37, 43, 46, 59, 62, 79, 82, 99, 102, 117, 120, 134, 136.)

The Amended Complaint contains seven counts, which we construe as alleging:  failure to pay the statutory minimum wage in violation of the FLSA and PMWA with respect to Plaintiffs Geng and Xie[2] and the putative collective/class (Counts I, II); violations of the FLSA and PMWA overtime provisions with respect to all named Plaintiffs and the putative collective/class (Counts III, IV); illegal retention of tips in violation of the FLSA and PMWA with respect to the waiter-Plaintiffs and the putative collective/class (Counts V, VI); and failure to pay all wages owed in violation of the WPCL with respect to all named Plaintiffs and the putative collective/class (Count VII).

### B.    Procedural Background

Plaintiffs filed their original Complaint on March 10, 2017.  (Compl., ECF No. 1.) Defendants filed a Motion to Dismiss on April 11, 2017.  (ECF No. 14.)  Plaintiffs filed an Amended Complaint on May 2, 2017.  (Am. Compl., ECF No. 17.)  Defendants filed the instant Motion to Dismiss on May 16, 2017.  (MTD, ECF No. 18.)  Plaintiffs filed a Response in

---

[2] The Amended Complaint does not clearly identify which named Plaintiffs are asserting minimum wage claims.  Although the Amended Complaint generally alleges that Defendants failed to pay each named Plaintiff the statutory minimum wage, its more specific allegations assert minimum wage violations only as to Geng and Xie.  (*Compare* Am. Compl. ¶¶ 45, 61, 81, 101, 119, 135, *with* ¶¶ 32, 152, 158-59.)  Our construction of the Amended Complaint is consistent with the more specific allegations.  *See Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint."); *see also In re Walnut Leasing Co.*, No. 99-526, 1999 WL 729267, at *4 n.9 (E.D. Pa. Sept. 8, 1999) (quoting *Hirsch*).  Moreover, as is discussed *infra*, the Plaintiff-specific wage and hour allegations reveal that Plaintiffs only state a plausible minimum wage claim as to Geng for one portion of his employment.

Opposition on May 30, 2017.  (Pls. Resp., ECF No. 20.)  Defendants filed a Reply on June 12, 2017.  (Reply, ECF No. 23.)

## III.     DISCUSSION

### A.     FLSA and PMWA Minimum Wage Claims

The FLSA was enacted for a "broad remedial purpose," with its "central aim" being the "achieve[ment] … [of] certain minimum labor standards."  *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 329 (3d Cir. 2016) (citations omitted).  The FLSA primarily did so by establishing baseline minimum wage, overtime, and maximum hour guarantees that cannot be modified by contract.  *Id.* (citations omitted).  The PMWA similarly establishes a minimum wage for employees in Pennsylvania, one that is tethered to the minimum wage set by the FLSA.  43 Pa. Stat. Ann. § 333.104(a.1) ("If the minimum wage set forth in the [FLSA] is increased above the minimum wage required under this section, . . . [it] shall be increased by the same amounts. . . .").  Because of the substantial parallel between the two statutes' minimum wage provisions, federal courts are directed to interpret the FLSA when analyzing claims under the PMWA.  *See, e.g.*, *Razak v. Uber Tech., Inc.*, No. 16-573, 2016 WL 5874822, at *7 (E.D. Pa. Oct. 7, 2016) (finding plaintiffs had stated legally cognizable PMWA minimum wage claim because they had stated a legally cognizable FLSA minimum wage claim).

The FLSA's minimum wage provisions mandate a minimum wage of $7.25 for employees who, in any workweek, are engaged in commerce or the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a)(C).

Defendants argue that Plaintiffs fail to state a claim for violations of the minimum wage provisions because, taking the allegations in the Amended Complaint as true, Plaintiffs actually allege that they were paid more than the required minimum wage of $7.25.

In order to state a claim for minimum wage violations, a plaintiff must allege that his average hourly wage falls below the federal minimum wage. *See Razak*, 2016 WL 5874822, at *5. A plaintiff's average hourly wage is determined by calculating his "regular rate:" Whatever the employee's payment method (*e.g.*, piece-rate, salary, commission), the regular rate will be computed "by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. In general, "hours worked" includes all time when an employee is required to be on duty, and may include circumstances that are not productive work time. 29 C.F.R. § 778.223.

When evaluating the sufficiency of a claim for FLSA violations, courts in this circuit do not require plaintiffs to make specific factual allegations regarding wages earned and hours worked, but plaintiffs must at least allege the general facts of an FLSA violation. In *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 241-44 (3d Cir. 2014), the Third Circuit adopted a "middle-ground approach" for evaluating the sufficiency of FLSA overtime claims. The court held that a plaintiff need not allege the exact dates and times of the overtime worked, nor even the approximate uncompensated number of overtime hours for which wages were not received, but must at least allege some amount of uncompensated time in excess of a given forty-hour work week. The plaintiffs in *Davis* alleged that they "typically" worked between thirty-two and forthy hours per week and "frequently worked extra time." *Id.* (internal quotation marks omitted). These plaintiffs never indicated, however, that the extra hours occurred during a

typical forty-hour work week, nor did they allege even one workweek in which they worked in excess of forty hours and were uncompensated for it. *Id.* The court held that their allegations were insufficient to state a plausible FLSA overtime claim. *Id.* The court noted that if a plaintiff were to claim "that she typically worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks," that would suffice to state a claim. *Id.*; *see also Razak*, 2016 WL 5874822, at *5-6 (applying *Davis* approach to FLSA/PMWA minimum wage claims, and finding that plaintiffs' general allegations that they were paid less than minimum wage sufficed, even though they never specified any particular week as *Davis* instructed).[3]

We must first address the parties' positions regarding how to calculate the Plaintiffs' wages based upon the allegations in the Amended Complaint. Using Plaintiff Geng as an example, Defendants cite Geng's allegation that he was paid $900 every "half month" from January 31, 2015 to February 28, 2015, then they assume that "half month" means bi-weekly, or 26 pay periods per year.[4] Defendants then convert $900 bi-weekly to $450 of pay per week. In other words, Defendants calculate Geng's weekly pay using the following formula: ($900 x 26) ÷ 52 (weeks in a year) = $450. Defendants then take Geng's allegation that he worked around 65.5 hours per week and subtract his stated meal periods of 35 minutes per day to reach a total of 62 hours of work per week. Finally, Defendants calculate that $450 per week, divided by 62 hours, is equal to an hourly rate of $7.258, which satisfies the FLSA's required minimum wage

---

[3] The court in *Razak* also gave weight to the fact that FLSA regulations put the onus on employers, not employees, to keep payroll records of hours worked per day and per week, and straight-time and overtime pay. *See Razak*, 2016 WL 5874822, at *6 (citing 29 C.F.R. § 516.2).

[4] Bi-weekly pay is not synonymous with semi-monthly pay. The former results in 26 pay periods per year, while the latter results in 24 pay periods per year.

of $7.25.  Applying this method to the wage and hour allegations of each named Plaintiff, Defendants argue that none of the Plaintiffs were paid less than the required minimum wage.

However, Plaintiffs point out, and we agree, that Defendants make a mistake, albeit a reasonable one, in converting "half month" payments into a "weekly" number.  Plaintiffs clarify in their Response that "half month" literally means semi-monthly, *i.e.*, twice a month, resulting in 24 pay periods, not 26.  Therefore, Plaintiffs argue that for Geng, the proper calculation is to multiply his semi-monthly pay by 24 pay periods to determine the yearly pay, then divide that sum by 52 weeks to determine his weekly pay.

If Plaintiffs stopped there, we would be in total agreement with their calculations. Unfortunately, they go on to argue that in order to calculate their respective hourly wages, we must factor in the overtime pay allegedly due to them for working in excess of forty hours per week.  As an example, Plaintiffs argue that Geng's weekly minimum pay in the above scenario should be calculated by multiplying 40 hours per week by $7.25, which is $290, then multiplying 25.5 hours per week (the hours worked in excess of forty) by $10.875 (the FLSA time-and-a-half rate for overtime hours[5]), which is $277.31, and adding those totals together to get a weekly pay rate of $567.31.  (*Id.* at 4-5.)  Working 65.5 hours per week, that would come out to an hourly wage of $8.66.  This is what Plaintiffs' claim should be Geng's "minimum wage."

Plaintiffs' use of overtime pay here is incorrect.  They conflate the minimum wage provisions of § 206 with the overtime provisions of § 207.  These are different sections of the FLSA and are entirely separate violations (a point Plaintiffs should have realized, considering that the Amended Complaint states claims for both minimum wage and overtime violations). The structure of the statute, the explicit wording of those sections, the broad purpose of the FLSA accomplished via minimum wage and overtime protections, and the "regular rate"

---

[5] *See* 29 U.S.C. § 207.

calculation contrasted with the overtime pay calculation all make clear that overtime pay does not factor into minimum wage calculations.

As a result of the parties' errors, we are forced to calculate the alleged hourly "regular rates" for Geng and Xie according to the facts alleged in the Amended Complaint. Plaintiffs allege that Geng was paid every "half month," which we construe as semi-monthly and convert to a weekly rate using Plaintiffs' method, but disregarding their consideration of overtime pay. As to Xie, who was paid $80 per day, we adjust accordingly. The parties also dispute whether any alleged break time should be deducted from the calculations. Construing all alleged facts in favor of the Plaintiffs, and considering that the intermittent and irregular meal periods described in the Amended Complaint are likely "hours worked," we will use the number of hours worked alleged by Plaintiffs without factoring in any deductions for possible breaks. *See, e.g.*, *Smiley*, 839 F.3d at 331 (noting that meal periods may "not necessarily" be productive work time but may still count as "hours worked" under the FLSA).

Applying this framework to the Plaintiffs' allegations, Geng's hourly rates were: $6.34 during his first period of employment,[6] $7.75 during the second period,[7] $11.63 during the third period,[8] and $12.33 during the fourth period.[9] Xie's hourly rate throughout his employment was $7.27.[10] These calculations demonstrate that only Geng alleges facts that explicitly state he was

---

[6] ($900 x 24) ÷ 52 = $415.38/week ÷ 65.5 hours worked/week = $6.34.

[7] ($1,100 x 24) ÷ 52 = $507.69/week ÷ 65.5 hours worked/week = $7.75.

[8] ($1,650 x 24) ÷ 52 = $761.54/week ÷ 65.5 hours worked/week = $11.63.

[9] ($1,750 x 24) ÷ 52 = $807.69/week ÷ 65.5 hours worked/week = $12.33.

[10] $80/day x 6 days worked/week = $480/week ÷ 66 hours worked/week = $7.27

paid an hourly wage below the minimum wage, *i.e.*, he was paid $6.34 per hour while working at Pinwei Restaurant from January 31, 2015, to February 28, 2015.[11]

We recognize that the pleading standard for FLSA violations is somewhat lenient, and Plaintiffs are in the unfortunate position where if they had simply omitted the hours and wages from the Amended Complaint and instead relied on more vague language, they might have stated sufficient minimum wage claims under the approach set out in *Davis*. The FLSA does place the onus on Defendants to keep payroll records and, in that vein, we take note of Plaintiffs' allegations that they were never given any type of earning statements or even told their hourly wages. As such, we may infer that Plaintiffs essentially estimated their pay, especially their hours worked. In some of the above calculations, a slight change in hours or pay would cause the hourly rate to fall below the minimum wage. But taking their stated allegations as true, we cannot disregard the numbers as Plaintiffs claim them to be.

Accordingly, with the exception of Geng, all named Plaintiffs' FLSA and PMWA minimum wage claims will be dismissed without prejudice. Defendants do not move to dismiss the FLSA/PMWA overtime claims, and it is possible that, should this case proceed to discovery, Plaintiffs will obtain additional information regarding their pay history. If the appropriate circumstances support it, Plaintiffs may seek to amend their Amended Complaint at such time to reassert their minimum wage claims.

---

[11] As noted above, we construe the Amended Complaint as asserting minimum wage claims only as to Geng and Xie. Nonetheless, application of the above framework to the allegations of the remaining named Plaintiffs reveals that they were paid hourly rates above the statutory minimum wage. We further note that assertion of a putative FLSA collective action "does not relieve each named plaintiff of its individual burden to state a legal claim for relief." *Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 567 (E.D. Pa. 2017).

### B.  FLSA and PMWA Tip Claims

Plaintiffs allege that Defendants illegally retained their tips.  They allege that Defendants made use of the FLSA's tip credit provision but never informed Plaintiffs that they were doing so.  Plaintiffs further allege that they were never told their tips were being counted towards their minimum wage under the tip credit, that they were made to perform non-tipped work which exceeded 20% of their work hours, that Defendants would take any tips Plaintiffs earned from making deliveries, and that their tips were taken and then used to pay customarily non-tipped employees also working at Pinwei.

Defendants build on their earlier minimum wage argument and contend that, because the Plaintiffs were actually paid an hourly rate above minimum wage, and because they do not specify in the Amended Complaint the amount of their tips retained by Defendants, the rate they were paid above the minimum wage must necessarily represent their actually received tips.  Defendants also characterize the claim of illegal retention of tips as a fraud allegation under Rule 9 of the Federal Rules of Civil Procedure.  Plaintiffs disagree and note that they explicitly allege that Defendants retained all tips that Plaintiffs received during employment while waiting tables or making deliveries, and as such Plaintiffs would have no way of even knowing how much money in tips was taken from them.

The FLSA allows employers to pay "tipped employees" less than the required minimum wage if the employees' wages and tips, added together, meet or exceed the minimum wage.  29 U.S.C. § 203(m).  This payment arrangement is known as the "tip credit," and if employers choose to take this tip credit, they may pay their tipped employees an hourly rate of $2.13, which is then supplemented by the employee's retained tips to meet the required federal minimum

wage.  *Mackereth v. Kooma, Inc.*, No. 14-04824, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015).

There are strict requirements an employer must follow in order to claim the tip credit in conformance with § 203.  "An employer can utilize the tip credit only when: 1) an employer informs the employee that a tip credit is being utilized and the amount of such a credit; 2) the employee makes tips equaling the tip credit amount and 3) the employee retains all tips collected."  *Id.* (citing 29 C.F.R. § 531.59).  The tip credit may be taken only for those hours worked for which the employee would qualify as a "tipped employee."  29 C.F.R. § 531.59.  An employee's tips may be taken to contribute to a valid tip pool, which may only include those employees who customarily and regularly receive tips, and again the employer must notify its employees of any required tip pool contribution amount and not retain the tips for any other purpose.  29 C.F.R. § 531.54.  Pennsylvania law is in accord with the FLSA.  *See* 43 Pa. Stat. Ann. § 103(d); 34 Pa. Code § 231.101; *Calabrese v. TGI Friday's Inc.*, No. 16-0868, 2017 WL 5010030, at *3-4 (E.D. Pa. Nov. 2, 2017) (noting the similarity between the FLSA and Pennsylvania laws regarding tip credit).

Plaintiffs have made sufficient allegations to state a claim for illegal retention of tips under the FLSA/PMWA provisions.  They allege that Defendants made use of the tip credit, did not inform Plaintiffs they were doing so, that Defendants used the tip credit even though Plaintiffs were made to do a significant amount of non-tipped work and, finally, that Plaintiffs' tips were used by Defendants to pay non-tipped employees.  Defendants' argument about the hourly rate is unavailing.  Plaintiffs explicitly allege that they were kept in the dark about the tip credit and tip amounts, so they would not be able to allege with any specificity at this time whether any portion of their income was derived from tips.  We reiterate that the FLSA places

the onus of record keeping on employers. Moreover, Plaintiffs explicitly allege that Defendants took their tips from waiting tables and making deliveries and also used these tips to pay non-tipped employees, a clear violation of the tip credit rules apart from any issue related to the overall amount of tips taken from them. *See, e.g.*, *Mackereth*, 2015 WL 2337273, at *7 (finding plaintiffs' allegations of never having been notified of defendants' intent to take tip credit, never receiving information about the tip credit, and having tips taken from them to compensate other non-tipped employees sufficiently stated an FLSA claim under § 203(m) and §206).

Accordingly, Defendants' Motion to Dismiss Plaintiffs' allegations of illegal tip retention will be denied.

### C.    WPCL Claims

Plaintiffs allege that Defendants have committed WPCL violations by intentionally failing to pay them their due and proper wages. Defendants again argue that, according to their calculations, Plaintiffs have not shown that they were paid less than the minimum wage or had their tips illegally retained and, therefore, have not stated a sufficient claim for recovery under the WPCL. Plaintiffs argue that they are owed money by Defendants, and that the WPCL is a proper statutory vehicle to recover that money. They also argue that Defendants' alleged unfulfilled promise to pay Plaintiff Xie $90 per day constitutes an employment agreement.

"'The WPCL does not create a right to compensation,'" but rather "'provides a statutory remedy when the employer breaches a *contractual obligation to pay earned wages*.'" *Mackereth*, 2015 WL 2337273, at *10 (quoting *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (italics in original)); *Oberneder v. Link Comput. Corp.*, 696 A.2d 148, 150 (Pa. 1997) ("The [WPCL] provides employees a statutory remedy to recover wages and other benefits that are contractually due to them."). The employee must allege the existence of an

employment contract: "'[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer.'" *Drummond v. Herr Foods Inc.*, No. 13-5991, 2014 WL 80729, at *3 (E.D. Pa. Jan. 9, 2014) (quoting *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011)).

We find that Plaintiffs have not alleged the existence of a contractual right, either express or implied, to recover the wages and tips they seek pursuant to the WPCL. *See Mackereth*, 2015 WL 2337273, at *10 (finding tipped employees of defendant restaurant failed to allege existence of contract); *Drummond*, 2014 WL 80729, at *3 (finding no allegations of a contract and dismissing, but allowing leave to amend in light of possible evidence suggesting an implied binding agreement).

Accordingly, Defendants' Motion to Dismiss will be granted as to Plaintiffs' WPCL claims, which will be dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, with the exception of the minimum wage claims made by Plaintiff Geng, Defendants' Motion to Dismiss will be granted without prejudice as to Plaintiffs' minimum wage claims asserted in Counts I and II. Defendants' Motion will be denied as to Plaintiffs' claims of illegal tip retention asserted in Counts V and VI. Defendants' Motion will be granted without prejudice as to Plaintiffs' WPCL claims asserted in Count VII.

An appropriate Order follows.

**IT IS SO ORDERED.**

                                       **BY THE COURT:**

                                       _____
                                       **R. BARCLAY SURRICK, J.**