# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RUI TONG, et al.,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiffs,* | : | |
| **v.** | : | **NO. 17-1073** |
| | : | |
| **HENDERSON KITCHEN, INC., et al.,** | : | |
| | : | |
| *Defendants.* | : | |

## MEMORANDUM

This case concerns allegations that Defendants Henderson Kitchen, Inc.,

Yeng-Lung Kuo, and Gary Kuo, owners of the restaurant Pin Wei, failed to pay

their employees minimum wage and overtime wages and that they illegally

retained employees' tips. Plaintiffs were employees at Defendants' restaurant for

various periods from 2014 to 2016. Five of the Plaintiffs were employed as servers

at the restaurant and were tipped for their service by restaurant patrons. One

Plaintiff worked in the kitchen of the restaurant and was not tipped. Plaintiffs'

testimony showed that they were each paid a "flat rate;" one paid a daily rate,

others a semi-monthly or monthly rate. This rate included lodging at a house

owned by Defendants and three meals on the days they worked.

Following the Honorable R. Barclay Surrick's ruling on Defendants' Motion

to Dismiss, the following claims from Plaintiffs' Amended Complaint remain: (1)

1

minimum wage claims (Counts I and II) on behalf of Plaintiff Chuan Geng alone,

(2) unpaid overtime claims (Counts III and IV) on behalf of all Plaintiffs, (3)

illegal tip retention claims (Counts V and VI) on behalf of all Plaintiffs except

Plaintiff Xie in violation of the Fair Labor Standards Act ("FLSA") and

Pennsylvania Minimum Wage Act ("PMWA").[1] ECF No. 25. In October 2019,

this Court conducted a two-day bench trial at which it heard testimony from

Plaintiffs and Defendants and reviewed the parties' documentary evidence.

Having conducted the bench trial, reviewed the parties' proposed findings of fact,

and examined the relevant law, this Court finds as follows:

## Findings of Fact

1.    Defendants, Yeng-Lung Kuo, Gary Kuo, and Henderson Kitchen, Inc.

owned and/or operated the Pin Wei Restaurant ("Pin Wei" or the "Restaurant")

located at 314 South Henderson Road Suite C, King of Prussia, PA 19406 from

2012 until 2019. Trial Tr., Vol. 2 at 71-72; 108.

2.    Defendants Yeng-Lung Kuo and Gary Kuo opened Pin Wei in 2012.

*Id.* at 85.

---

[1] As in *Belt v. P.F. Chang's China Bistro, Inc.*, "this opinion will only reference the FLSA, because any result reached under this statute applies equally to Plaintiffs' FLSA claims and Plaintiffs' PMWA claims." 401 F. Supp. 3d 512, 519 (E.D. Pa. 2019) (citing *Razak v. Uber Techs., Inc.*, 2016 WL 5874822, at *7 (E.D. Pa. Oct. 7, 2016)) ("Because the PMWA substantially parallels the FLSA, federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA.").

3. Defendants Yeng-Lung Kuo and Gary Kuo had no prior experience owning or operating a restaurant prior to opening Pin Wei. *Id.* at 48-49, 88-89.

4. Defendants Yeng-Lung Kuo and Gary Kuo managed the employees at Pin Wei from 2012 until they sold the business in 2019. *Id.* at 72-73, 108-109.

5. During this time, Defendants Yeng-Lung Kuo and Gary Kuo hired an accountant to help with expenses, taxes, and payroll. *Id.* at 38-40, 43, 67, 89. The accountant did not counsel Defendants Yeng-Lung Kuo and Gary Kuo how to run their business. *Id.* at 67, 69.

6. Both parties agree that all six Plaintiffs were employees of Pin Wei as defined by the FLSA and PMWA. ECF No. 119 at ¶ 11; ECF No. 122 at ¶ 12.

A. Plaintiff Ya-Tang Chi

7. The first witness, Plaintiff Ya-Tang Chi, was hired through a job agency to work as a server at Pin Wei, beginning in January 2014. Trial Tr., Vol. 1 at 6.

8. When he arrived to work at Pin Wei, Defendant Gary Kuo told him that they would guarantee his base wage, including tips, at $2800 a month. *Id.* Plaintiff Chi understood that the monthly amount was his "flat pay for all the days and hours [he] was working." *Id.* at 42.

9. Plaintiff Chi worked at the rate of $2800 per month at Pin Wei until March 30, 2014, when he left Pin Wei. *Id.* at 8-9, 41.

3

10.     Plaintiff Chi came back to work at Pin Wei in May 2014 and, prior to returning, asked to be paid $3000 a month. *Id*. at 10. Defendants agreed to that amount. *Id*. During this period, Plaintiff Chi was paid $3000 a month to work six days a week. *Id*. at 11.

11.     Plaintiff Chi again left Pin Wei in the middle of July 2014 and returned on December 20, 2014. *Id*. at 13. Prior to returning, Plaintiff Chi asked to be paid $3,300 per month, and Defendants agreed to that wage. *Id*. at 14. In February 2015, Plaintiff Chi's salary increased again to $3,500 per month. *Id*. at 14. Plaintiff Chi left Pin Wei on March 1, 2015. *Id*.

12.     While Plaintiff Chi worked at Pin Wei, he typically worked six days a week. *Id*. at 15. His day off was not fixed but changed from week to week. *Id*. Plaintiff Chi would mark on a sign in sheet the days that he worked but not his specific hours. *Id*. at 26.

13.     During shifts, Plaintiff Chi would rest here and there, "no more than an hour," since he spent time when customers were not in the restaurant "prepar[ing] the food, pick[ing] the string beans, clean[ing] the restroom," preparing takeout, etc. *Id*. at 16-18.

14.     While working, Pin Wei provided breakfast, lunch, and dinner at no additional cost to Plaintiff Pin Wei. *Id*. at 19.

15.     Defendants would collect the tips received from the customers and

4

keep them. *Id.* at 25.

B. Plaintiff Rui Tong

16.    The second witness, Plaintiff Rui Tong, was an employee of Pin Wei
Restaurant from January 2015 to July 2016, taking "some time off in" August
2015. *Id.* at 64.

17.    Plaintiff Tong worked six days a week and would take one day off
between Monday and Thursday per week, normally picking Tuesday. *Id.* at 65.

18.    When he was hired, Yeng-Lung Kuo told Plaintiff Tong that he would
make $2500 the first month, and, beginning with the second month, he would be
paid $3,000 a month. *Id.* at 65. This included "base wage and the tips." *Id.*
Plaintiff Tong was paid $2500 in January 2015 and $3000 per month from
February 2015 to the end of March 2015. *Id.* at 65-66.

19.    In April 2015, Defendants raised Plaintiff Tong's monthly pay to
$3200. *Id.* at 78. In mid-May 2015, Defendants raised Plaintiff Tong's monthly
pay to $3300. *Id.* at 79. At the end of May 2015, Defendants increased Plaintiff
Tong's monthly pay to $3350. *Id.* These monthly rates included housing at the
company house and all meals during his workday. *Id.*

20.    Plaintiff Tong chose to live in the company house while he was
working at Pin Wei. *Id.* at 93-94.

5

C. Plaintiff Junyi Xie

21.    The third witness, Plaintiff Junyi Xie, first worked at Pin Wei from September 15, 2015 until September 30, 2015. *Id.* at 96.

22.    Plaintiff Xie came back to work at Pin Wei on October 5, 2015 until October 21, 2015. *Id.* at 97.

23.    Plaintiff Xie was paid $80 per day, including three meals per day and housing at the company house. *Id.* at 97, 98. Defendants paid Plaintiff Xie semi-monthly. *Id.* at 101.

24.    Plaintiff Xie worked six days a week, with either Monday or Wednesday off. *Id.* at 100.

25.    Plaintiff Xie worked various jobs at Pin Wei, including "cutting the meat, clean[ing] the kitchen and do[ing] all the chores and washing dishes." *Id.* Plaintiff Xie did not interact with customers, nor receive tips. *Id.* at 96.

26.    Plaintiff Xie was allowed "almost no[]" breaks during the working day, only the time he ate his meals or went to the bathroom. *Id.* at 102.

27.    When Plaintiff Xie returned to work at Pin Wei in October 2015, he was promised $100 a day, but he was still paid at his original $80 per day wage. *Id.* at 103.

D. Plaintiff Weijan Tang

28.    The fourth witness, Plaintiff Weijan Tang, worked as a waiter serving

6

customers at Pin Wei from January 23, 2015 until the end of August 2015. *Id.* at 107.

29. Plaintiff Tang was paid $1500 every half month. *Id.* at 108. This amount included three meals a day and housing at the company house. *Id.* at 109. Plaintiff Tang lived in the company house. *Id.*

30. Plaintiff Tang worked six days a week. *Id.* at 109. Plaintiff Tang took off on Wednesdays. *Id.*

31. In addition to serving customers, Plaintiff Tang also "did side jobs every day," including around an hour of "do[ing] the dumpling[s], mak[ing] the wonton[s] and the string bean[s] and the snow bean[s]." *Id.* at 117.

E. Plaintiff Kun Yang

32. The fifth witness, Plaintiff Kun Yang, worked as a waiter at Pin Wei from August 8, 2015 to the "end of July 2016." *Id.* at 121-122. During that time, Plaintiff Yang took one week off at the end of May 2016. *Id.* at 122.

33. Plaintiff Yang was paid $1500 twice a month for the first two months. *Id.* at 125. Starting October 1, 2015 until the end of July 2016, Plaintiff Yang was paid $1600 twice a month. *Id.* at 125.

34. During his time as an employee of Pin Wei, Plaintiff Yang did not live in the company house. *Id.* at 124. Plaintiff Yang did eat meals provided by the restaurant, the cost of which was included in his pay. *Id.* at 126-127, 133.

7

35. As a waiter, Plaintiff Yang served the customers in addition to completing "some chores," including "prepar[ing] the wonton[s], the dumpling[s], clean[ing] the snow beans, string beans and clean[ing] the dishes and clean[ing] the spoon[s] and forks, clean[ing] the floor and clean[ing] the bathroom." *Id.* at 122.

36. Plaintiff Yang worked six days per week from August 8, 2015 until March 2, 2016. *Id.* Plaintiff Yang did not have a fixed day off, but he had one day off between Monday and Thursday every week. *Id.*

37. In January 2016, Plaintiff Yang was tasked with opening the restaurant in the mornings. *Id.*

38. Plaintiff Yang complained to Defendants Yeng-Lung and Gary Kuo about not receiving tips twice while he was an employee at Pin Wei. *Id* at 127. The first time Plaintiff Yang discussed his complaint with Defendants Yeng-Lung Kuo and Gary Kuo, they raised his wage from $3000 per month to $3200 per month. *Id.* at 128. The second time Plaintiff Yang discussed his complaint with Defendants Yeng-Lung Kuo and Gary Kuo, they reduced his working days from six to five days per week. *Id.*

39. Plaintiff Yang worked five days per week from March 2, 2016 to July 22, 2016. *Id.* During the time he worked five days a week, Plaintiff Yang still received $3200 per month. *Id.* at 128.

F. Plaintiff Chuan Geng

8

40. The sixth witness, Plaintiff Chuan Geng, worked as a server at Pin Wei from January 31, 2015 until July 2016. Trial Tr., Vol. 2 at 11. During that time, Plaintiff Geng took one vacation lasting two weeks in August 2015. *Id.*

41. In addition to serving the customers, Plaintiff Geng would also do "side work[]" including "mak[ing] some dumplings and . . . do some jobs in the kitchen." *Id.* Plaintiff Geng typically spent one to one and a half hours doing this "side work" each day that he worked. *Id.*

42. Plaintiff Geng worked six days per week and typically took his day off on Monday or Wednesday. *Id.* at 13.

43. Plaintiff Geng's salary changed throughout his time at Pin Wei. *Id.* at 16. From January 31, 2015 until February 28, 2015, Plaintiff Geng was paid $1800 per month. *Id.* at 14, 24. Starting March 1, 2015, Plaintiff Geng was paid $2200 per month. *Id.* at 14, 24. From May 1, 2015 and until August 21, 2015, Plaintiff Geng was paid $2400 per month. *Id.* at 24-25. Starting when Plaintiff Geng returned from his vacation in September 2015 and until July 2016, Plaintiff Geng was paid $3000 per month. *Id.*

44. This wage rate included housing at the company house and three meals per day. *Id.* at 18-19. Plaintiff Geng lived in the company house while he worked at Pin Wei and received his meals from Pin Wei. *Id.* at 18-19.

45. Each time Plaintiff Geng complained about his wages to Defendants

9

Yeng-Lung Kuo and Gary Kuo, they increased his pay, including in February, March, and August 2015. *Id.*

46.     Plaintiff Geng was paid every half month. *Id.* at 24.

47.     Plaintiff Geng understood that his wage rate included tips. *Id.* at 28.

G. Defendant Yeng-Lung Kuo

48.     The seventh witness, Defendant Yeng-Lung Kuo, had 100% ownership interest in Pin Wei until 2017 when she gave 10% of the ownership interest to her husband, Defendant Chao Hsuing Kuo, aka Gary Kuo. *Id.* at 35-36.

49.     Pin Wei's operating hours during the relevant period were 11:00 a.m. to 9:30 p.m. Monday through Thursday, 11:00 a.m. to 10:00 p.m. Friday and Saturday, and 12:00 p.m. to 9:00 p.m. on Sunday. *Id.* at 34-35, 71. Servers were required to arrive at Pin Wei about half an hour before opening to set up. *Id.* at 35.

50.     Defendant Yeng-Lung Kuo, along with her husband and son, would also serve the customers when the restaurant was busy. *Id.*

51.     Defendant Yeng-Lung Kuo paid each employee a "flat salary" but, in her accounting documents, she notated for herself which part of the flat salary came from tips and which came from the non-tip revenue. *Id.* at 40-41.

52.     Plaintiffs' stated wage rate was inclusive of tax. *Id.* at 77. Defendants paid out the quoted wage rate to Plaintiffs and paid the withholding taxes on those wages themselves. *Id.* at 79-80.

10

53.     If the revenue from the Restaurant was not sufficient to pay all of the employee's wages, Defendant Yeng-Lung Kuo would take the money from her paycheck or her personal account to pay them. *Id.* at 80.

54.     Defendant Yeng-Lung Kuo was responsible for the financial records of Pin Wei. *Id.* at 79. Defendant Gary Kuo did not take part in making out the payroll, in writing checks, or in managing the bank account. *Id.*

55.     Defendants paid the withholding takes to the federal and state governments. *Id.* at 82.

56.     Employees at Pin Wei who lived in the company house would arrive at the restaurant together by van, which was paid for by Defendants. *Id.* at 85.

57.     Defendants considered the slow period, from around 2:00 p.m. to 5:00 p.m., after Plaintiffs had finished about an hour of "side work," to be Plaintiffs' free time, during which they could do whatever they wanted to do. *Id.* at 87.[2]

## H. Plaintiffs' Working Hours

58.     Each Plaintiff testified at the bench trial to working hours differing by half an hour to three hours per week, from 65.5 hours per week to 68.5 hours per week. Trial Tr., Vol. 1 at 18-19, 64-65, 100, 109, 123; Trial Tr., Vol. 2 at 12.

_____

[2] Defendant Gary Kuo also testified. Trial Tr., Vol. 2 at 108.

11

These hours are further inconsistent with the affidavits filed by Plaintiffs, wherein five Plaintiffs swore to working 65.5 hours per week, and one Plaintiff swore to 66 hours per week.[3] Lastly, Plaintiffs' exhibit laying out damages, to which Plaintiffs cite in their post-trial Proposed Findings of Fact and Conclusions of Law, assume five Plaintiffs worked 65.5 hours per week and one Plaintiff worked 66 hours per week. ECF No. 88-1; ECF No. 122 at ¶ 35.

59. Furthermore, two Plaintiffs testified that their working hours matched the hours that Pin Wei was open. Trial Tr., Vol. 2 at 12 ("I only look at the [menu] and I know that the working hours, the store hours."); Trial Tr., Vol. 1 at 109 ("When did you first learn what schedule you would be working at Pin Wei? A. The [menu.] The [menu] had the schedules in it.").

60. Defendant Yeng-Lung Kuo credibly testified that the hours that Pin Wei was open were as follows: "11:00 to 9:30 p.m. on Monday through Thursdays, from 11:00 to 10:00 p.m. on Fridays and Saturdays and from 12:00 to 9:00 p.m. on Sundays." Trial Tr., Vol. 2 at 71.

61. Defendant Yeng-Lung Kuo testified credibly that the employees had to arrive at the restaurant "half [an] hour earlier" than the time the Restaurant opened to "set up." Trial Tr., Vol. 2 at 35. Including one day off between Monday

---

[3] These weekly hours are for those employees who worked 6 days per week. During the weeks Plaintiff Yang worked five days per week, he swore to working 54.5 hours per week. ECF No. 38-9.

12

and Thursday per Plaintiff, this totals 65.5 hours per week per Plaintiff.

62. In addition, Defendant Yeng-Lung Kuo and two of the Plaintiffs credibly testified that all Plaintiffs living in the company housing traveled together in the same van to and from work each day that they worked. Trial Tr., Vol 2 at 85 ("They come together by the van. The companies offer the van. They come together. And they leave there, their apartment, by 10:30 and come to the restaurant."); Trial Tr., Vol. 1 at 49 ("Q. You all came together [to work] in a van. Correct? A. Yeah. . . . Q. So if there was still customers in the restaurant and the van was leaving at 9:30, you had to take the van. Right? To get home? A. Yes."); Trial Tr., Vol. 1 at 80-81 ("Q. At any point during your employment, did you [Plaintiff Tong] drive the transportation van for employees between the dormitory and the restaurant? A. Yes, yes.").

63. Furthermore, most, if not all, Plaintiffs lived in the company house during the entire time that they worked at Pin Wei. Trial Tr., Vol. 1 at 19, 53-54, 93, 101, 109; Trial Tr., Vol. 2 at 18-19, 29-30.

64. Lastly, Plaintiffs did not acknowledge or provide any reason via testimony or affidavit for why they reported their working hours differently.[4]

65. Therefore, this Court finds that all Plaintiffs who worked 6 days per

---

[4] In addition, Plaintiff Chi noted that the amount of his salary was incorrect on his affidavit and that his "attorney maybe" made that mistake. Trial Tr., Vol. 1 at 44.

13

week worked 65.5 hours per week. During the weeks that Plaintiff Yang worked only 5 days per week, this Court finds that he worked 54.5 hours per week.

## Conclusions of Law

### I. Statute of Limitations

1. The FLSA states that a cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255.

2. A violation under § 255 is "willful if, at minimum, the employer 'showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]'" *Stone v. Troy Constr.*, LLC, 935 F.3d 141, 148 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-133 (1988)).

3. Plaintiffs contend that Defendants' alleged violations of FLSA were willful because "Defendants did not maintain proper records of Plaintiffs' hours . . . [and] were aware or should have been aware of the FLSA's wage and hour obligations." ECF No. 122 at ¶ 37.

4. Prior to opening Pin Wei in 2012, Defendants had never owned a restaurant nor been in the restaurant business. Trial Tr., Vol. 2 at 109. Defendant

14

Yeng-Lung Kuo, who at first wholly owned Pin Wei and then later owned 90%, had worked for a gas station and sold clothes prior to buying the Restaurant. *Id.*

5.    Defendants credibly testified that they believed that the pay practices of the Restaurant were lawful. Trial Tr., Vol. 2 at 67-69, 82-85, 113-114.

6.    When Plaintiffs requested an increase in pay, Defendants either raised their salary or gave them additional time off at the same rate of pay. Trial Tr., Vol. 1 at 118-119, 128, Vol. 2 at 17, 113, 116. Defendants raised most of the Plaintiffs' pay multiple times. Trial Tr., Vol. 1 at 13-14, 78, 125; Vol. 2 at 14, 16-17.

7.    Defendants were solicited once via mail by a third party to purchase Department of Labor posters discussing overtime, which Defendants "threw [] out" because they "d[id]n't know what[] that [was,] [s]o we didn't get it." Trial Tr., Vol. 2 at 49.

8.    Defendant Yeng-Lung Kuo stated that prior to this lawsuit she "never th[ought] about this overtime," since she and Defendant Gary Kuo Kuo did "not have [] experience" with overtime. *Id.*

9.    Furthermore, Defendant Yeng-Lung Kuo stated that she made no effort to learn about overtime because she "never ha[d] a problem, so we didn't catch that part [about overtime.]" *Id.*

10.    This Court finds that Plaintiffs have failed to establish that Defendants showed reckless disregard for the matter of whether its conduct was

15

prohibited by the FLSA or the PMWA.

11. Therefore, the statute of limitations for Plaintiffs' claims is two years after the cause of action accrued. 9 U.S.C. § 255.

12. As Plaintiffs filed their Complaint on March 10, 2017, any of Plaintiffs' claims that accrued prior to March 10, 2015 are time barred.[5]

13. "For each payday where [Defendant] failed to pay its employees 'proper wages, a new and separate cause of action for unpaid overtime wages accrued.'" *Stone v. Troy Constr.*, LLC, 935 F.3d 141, 154 (3d Cir. 2019) (citing *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008)) ("A[n] [FLSA] cause of action . . . accrue[s], as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.")).

14. Therefore, the first payday for which any of the Plaintiffs who were paid monthly may recover is March 31, 2015.

---

[5] Defendants contend that, because Plaintiffs filed an Amended Complaint on May 2, 2017 (ECF No. 5), Plaintiffs' claims prior to May 2, 2015 should be barred. ECF No. 120. However, Fed. R. Civ. Pro. 15(c)(1)(B) states that an "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading." F.R.C.P. 15(c)(1)(B). As the amendments Plaintiffs made in their Amended Complaint arose out of the conduct set out in the original pleading, the Amended Complaint relates back to the date of the original pleading. *See Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (reiterating that "relation back of amendments that 'restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct" are proper) (internal citations omitted).

16

15. The first payday for which any of the Plaintiffs who were paid semi-monthly may recover is March 15, 2015.

16. Plaintiffs' claims will therefore be barred as follows:

17. Plaintiff Chi testified to working at the Restaurant from January 2014 to March 1, 2015. Trial Tr., Vol. 1 at 6, 14. Therefore, all of Plaintiff Chi's claims are barred by the statute of limitations.

18. Plaintiff Tong testified that he worked at the Restaurant from January 1, 2015 to July 31, 2016. *Id.* at 64. Therefore, Plaintiff Tong's January and February 2015 claims are barred by the statute of limitations.

19. Plaintiff Xie testified that he worked at the Restaurant from September 15, 2015 to September 30, 2015 and again from October 5, 2015 to October 21, 2015. *Id.* at 96-97. Plaintiff Xie's claims are within the statute of limitations.

20. Plaintiff Tang testified that he worked at the Restaurant from January 23, 2015 through August 31, 2015. *Id.* at 107. Plaintiff Tang's January and February 2015 claims are barred by the statute of limitations.

21. Plaintiff Yang testified that he worked at the Restaurant from August 5, 2015 until the end of July 2016. *Id.* at 121-122. Plaintiff Yang's claims are within the statute of limitations.

22. Plaintiff Geng testified that he worked at the Restaurant from January

17

31, 2015 to July 31, 2016. Trial Tr., Vol. 2 at 11. Plaintiff Tang's January and February 2015 claims are barred by the statute of limitations.

## II. Counts I and II: Minimum Wage Claims

23. Plaintiff Geng is the only Plaintiff with a remaining claim for minimum wage. ECF Nos. 25, 114.

24. The FLSA states, "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [] rates[of] $7.25 an hour." 29 U.S.C.A. § 206.

I. Plaintiff Geng

25. Plaintiff Geng worked as a server at Pin Wei from January 31, 2015 until July 2016. Trial Tr., Vol. 2 at 11. During that time, Plaintiff Geng took one vacation lasting two weeks in August 2015. *Id.*

26. Plaintiff Geng worked six days per week and typically took his day off on Monday or Wednesday. *Id.* at 13.

27. Plaintiff Geng worked 65.5 hours per week. *See* supra ¶ 65.

28. From January 31, 2015 until February 28, 2015, Plaintiff Geng was paid $1800 per month. *Id.* at 14, 24. Starting March 1, 2015, Plaintiff Geng was

18

paid $2200 per month. *Id.* at 14, 24. From May 1, 2015 until August 21, 2015, Plaintiff Geng was paid $2400 per month. *Id.* at 24-25. Starting when Plaintiff Geng returned from his vacation on September 5, 2015 and until July 2016, Plaintiff Geng was paid $3000 per month. *Id.*

29. Plaintiff Geng's claims for January 31, 2015 to February 28, 2015, where he was paid $1800 per month, are time barred. *See* supra ¶ 21. Therefore, the Court will first consider whether Plaintiff Geng's wages complied with minimum wage for the period from March 1, 2015 through April 30, 2015.

30. During that period, Plaintiff Geng was paid $2200 per month. Trial Tr., Vol. 1 at 14, 24.

31. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

32. As a weekly rate, Plaintiff was paid $507.69.[6]

33. Plaintiff worked 65.5 hours per week during this period, therefore his hourly rate of pay was $7.57 per hour.

34. This is above minimum wage rate of $7.25 per hour, even excluding

---

[6] Plaintiff Geng was paid $2200 per month during this period. At that monthly rate, Plaintiff Geng was paid $26,400 per year ($2200 x 12) and therefore $507.69 per week ($26,400/52).

any salary credit for meals and housing.

35.     Because Plaintiff Geng continued to work the same number of hours
and because his salary increased after this period, this Court concludes that
Plaintiff Geng was paid above minimum wage for the entire time that he worked
for Defendants.

36.     Therefore, all minimum wage claims are dismissed.

## III.    Counts III and IV: Overtime Claims

37.     All Plaintiffs have maintained overtime claims against Defendants.

38.     "The FLSA establishes federal . . . maximum-hour, and overtime
guarantees that cannot be modified by contract." *Genesis Healthcare Corp.*, 569
U.S. at 69.

39.     Generally, an employer must pay its employees[7] one and one-half
times the employer's "regular rate at which [the employee] is employed" for hours
worked in excess of forty hours per week.  29 U.S.C. § 207.

40.     "Employers who violate these provisions are 'liable to the employee
or employees affected in the amount of their unpaid minimum wages, or their
unpaid overtime compensation, as the case may be, and in an additional equal
amount as liquidated damages.'"  *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236,

_____

[7] The parties agree that Plaintiffs are non-exempt employees. *See* ECF No. 122 at ¶ 27; ECF No.
119 at ¶ 22.

241 (3d Cir. 2014) (quoting 29 U.S.C. § 216(b)).

41.     "The 'regular rate' under the [FLSA] is a rate per hour. The [FLSA] does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate . . . The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the *total number of hours actually worked* by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109 (emphasis added).

42.     Where the employee is paid on a monthly or semi monthly salary basis, 29 C.F.R. 778.113 states that, first, the salary must be reduced to its workweek equivalent, and then "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is *intended to compensate*." 29 C.F.R. § 778.113 (emphasis added).

43.     "If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total *hours actually worked*. He is then entitled to

21

extra half-time pay at this rate for all hours worked in excess of 40 in the workweek." 29 C.F.R. § 778.112 (emphasis added).

44.    Plaintiffs contend that to calculate Plaintiffs' overtime pay, the Court must calculate the regular hourly rate of pay by "taking their semi-monthly rates, multiplying by 24 and dividing by 52 to convert the semi-monthly rates into weekly rates, adding the fair value of meals and lodging (as applicable) per week to the total obtained, and dividing that number by the number of hours per week that pay was intended to compensate (presumptively 40[)]." ECF No. 122 at ¶ 33 (*citing Zavala v. Wal-Mart Stores, Inc.*, No. 03-cv05309, 2008 U.S. Dist. LEXIS 74960, at *13 (D.N.J. Sept. 26, 2008)).

45.    However, Plaintiffs have cited no authority instructing the Court to add an additional amount for the "fair value of meals and lodging" to Plaintiffs' salary in order to calculate overtime, especially considering Plaintiffs testified that meals and housing were included in their pay. *See e.g.*, Trial Tr., Vol. 1 at 46, 94, 97, 101, 105, 108, 112, 118, 119.

46.    Furthermore, Plaintiffs failed to present any evidence during the bench trial to support their dollar estimations of the "fair value of meals and lodging."

47.    When Plaintiffs' counsel asked Defendant Yeng-Lung Kuo, "would it be fair to say that it took approximately $19,000 divided by nine people to house

22

one person," Defendant Yeng-Lung Kuo responded that she did not calculate or count how much it cost to house any individual employee. Trial Tr., Vol. 2 at 65.

48. Next, when Plaintiffs' counsel asked if Defendant Yeng-Lung Kuo kept "track of how much it cost to feed [her] employees," Defendant Yeng-Lung responded that she did not calculate how much that would cost. *Id.* at 65-66.

49. Because Plaintiffs submitted no other evidence to support these estimations, and because Plaintiffs have cited no authority to support adding these amounts to compute Plaintiffs' hourly rate, the Court will not compute the hourly rate by adding the "fair value of meals and lodging."

50. In addition, Plaintiffs calculated overtime pay by dividing the weekly salary by 40 hours, which they claim is the presumptive amount of hours the salary was intended to compensate. ECF No. 122 at ¶ 33. However, here, the salary was clearly "intended to compensate" the number of hours per week that each Plaintiff testified to working.[8]

---

[8] Plaintiffs cited *Zavala v. Wal-Mart Stores, Inc.* to state that the time the salary was intended to compensate was presumptively 40 hours per week, and therefore this Court should use 40 hours in computing the hourly rate. 2008 WL 4513604 (D.N.J. Sept. 26, 2008). However, the court in *Zavala* not only cited case law from the Southern District of New York to support this proposition, it also concluded that the evidence cited by Defendants in that case was sufficient to rebut the "rebuttable presumption" of 40 hours per week. *Id.* at *5. Furthermore, the Court in *Zavala* stated that Plaintiff in that matter would be required to "present evidence showing that the parties understood the weekly salary to cover only 40 hours." *Id.* Plaintiffs in this matter did not present any evidence to show that the parties understood their salary was intended to compensate only 40 hours per week of work, whereas each Plaintiff testified that he understood his working hours to be in excess of 40 hours per week.

23

51. Each Plaintiff stated that they knew the hours they were intended to work, which in all cases was over 40 hours per week. Trial Tr., Vol. 1 at 64, 100, 109, 122; Trial Tr., Vol. 2 at 12. Therefore, as discussed previously, the Court will compute the hourly rate based on 65.5 hours per week, as those were the hours the salary was "intended to compensate" and the hours Plaintiffs "actually worked." *See* supra ¶ 65.

52. Lastly, the Court notes that it gave the parties the opportunity to provide calculations to this Court to compute the overtime owed by Defendants to Plaintiffs in the form of proposed verdict slips and post-trial proposed findings of fact and conclusions of law.

53. Defendants failed to include any calculations for overtime for five of the Plaintiffs, instead claiming only that it owed no overtime pay to those Plaintiffs. ECF No. 122. Defendants contend unpaid overtime is owed only to Plaintiff Xie in the amount of $250.82, which they calculate by subtracting 35 minutes per day for mealtime. ECF No. 119. However, Plaintiff Xie testified that he was only permitted a break of "five minutes" to eat his meal and use the bathroom.[9] Trial Tr., Vol. 1 at 102.

---

[9] Defendants contend that "[t]he FLSA does not require employers to treat meal breaks as hours worked for purposes of calculating the hourly rate." ECF No. 119 at 29 n. 4 (citing 29 C.F.R. Section 785.19; *Smiley v. E.I. DuPont*, 839 F.3d 325, 335 (2016)). Defendants further state that "[n]o evidence has been adduced to show that Defendants expressly agreed to treat meal breaks as 'work time' or compensable hours. Accordingly, the FLSA permits the deduction of meal

24

54. Plaintiffs calculated overtime pay only by adding the "fair value of meals and housing" to the hourly rate, for which Plaintiffs cited no authority, and basing the hourly rate on 40 hours of work per week, though the salary was intended to compensate 65.5 hours per week. ECF No. 122.

55. Therefore, in failing to provide any relevant or proper calculations to the Court as to the overtime pay owed to Plaintiffs, Plaintiffs and Defendants have waived any challenges to the Court's calculations, including for any mathematical computations or errors.

A. Plaintiff Chi

56. All of Plaintiff Chi's claims were barred by the statute of limitations, therefore Plaintiff Chi has no claim for overtime.

B. Plaintiff Tong

57. Plaintiff Tong worked at the Restaurant from January 3, 2015 through July 31, 2016.[10] Plaintiff Tong's January and February 2015 claims are barred by

---

break time as an offset to 'hours worked.'" *Id.* However, Defendants did not credibly establish at the bench trial that Plaintiff Xie, or any Plaintiff, had any consistent break time during the workday. When asked if he "g[o]t any breaks during the working day," Plaintiff Xie testified, "[a]llmost none" and testified that he was only allowed a break for "the time . . . we eat our meal, we go to bathroom," which was only "five minutes." Trial Tr., Vol. 1 at 102. Defendants' counsel never established at trial that Plaintiff Xie received 35 minutes per day for mealtime. Therefore, this Court will not consider any break time in its hourly rate and overtime calculations.

[10] Plaintiff Tong's affidavit states that he worked at Pin Wei until March 2017, ECF No. 38-5, however, during the bench trial, Plaintiff Tong testified that he worked until "the end of July 2016." Trial Tr., Vol. 1 at 79. Although Defendants' counsel asked if Plaintiff Tong left on July 20, 2016, Plaintiff Tong never confirmed this end date. *Id.* at 88. The Court therefore finds that

25

the statute of limitations.

58. Plaintiff Tong worked a total of 65.5 hours per week.[11] *See* supra ¶ 65.

59. Plaintiff Tong was paid $3,000 a month for March 2015. *Id.* at 65.

60. From April 1, 2015, to May 15, 2015, Plaintiff Tong was paid $3200 per month. *Id.* at 78.

61. From May 16, 2015 to May 31, 2015, Plaintiff was paid $3300 per month. *Id.* at 79.

62. From June 1, 2015 through July 2016, Plaintiff Tong was paid $3350 per month. *Id.*

63. Plaintiff Tong's hourly rate for March 2015 was $10.57.[12]

64. Plaintiff Tong's hourly rate from April 1, 2015 to May 15, 2015 was $11.27.

---

Plaintiff Tong worked until July 31, 2016. Furthermore, Plaintiff Tong testified that he took "some time off" in August 2015, however he did not testify to how long this vacation lasted, nor did Defendants' counsel ask him about the extent of his vacation. *Id.* at 64. Therefore, this Court will not include any time off in its calculations for overtime for Plaintiff Tong.

[11] Defendants have not argued that this Court should subtract meal breaks from Plaintiffs' working hours, except for Plaintiff Xie as discussed supra ¶ 53 n. 9, nor did Defendants establish credible testimony or evidence at trial to show that Plaintiffs received a consistent meal break of any certain length of time every working day. Therefore, this Court does not include any break times in any of its calculations.

[12] To calculate the hourly rate, the Court first took the monthly salary, multiplied by 12, and divided by 52 to get the weekly salary. Then the Court divided that weekly salary by 65.5, or the hours that that salary was intended to compensate, to get the hourly rate. This same calculation is used throughout these overtime claims.

26

65.     Plaintiff Tong's hourly rate from May 16, 2015 to May 31, 2015 was $11.63.

66.     Plaintiff Tong's hourly rate from June 1, 2015 to July 31, 2016 was $11.80.

67.     As Plaintiff Tong worked 65.5 hours per week, Plaintiff Tong was entitled to overtime for 25.5 hours per week. Therefore, Plaintiff Tong is entitled to the following amounts in overtime:

68.     $539.07 in overtime for the period March 1-30, 2015.[13]

69.     $941.05 in overtime for the period April 1, 2015 to May 15, 2015.

70.     $296.57 in overtime for the period May 16, 2015 to May 31, 2015.

71.     $9,177.45 in overtime for the period June 1, 2015 to July 31, 2016.

72.     In total, Plaintiff Tong is entitled to $10,954.14 in unpaid overtime pay.

C. Plaintiff Xie

73.     Plaintiff Xie worked at the Restaurant from September 15, 2015 to September 30, 2015 and October 5, 2015 until October 21, 2015. *Id.* at 96.

74.     Plaintiff Xie was paid $80 per day and worked 6 days per week,

---

[13] As Plaintiff was already paid the hourly rate for the hours worked over 40, this amount consists of the additional .5 times pay he should have received during those 25.5 overtime hours per week. This same calculation is used throughout these overtime claims.

27

taking off either Monday or Wednesday. *Id.* at 100.

75.     Plaintiff Xie's weekly salary was therefore $480 per week.

76.     Plaintiff Xie worked 65.5 hours per week. *See* supra ¶ 65.

77.     Plaintiff Xie's hourly rate was $7.33 per hour.

78.     Plaintiff Xie worked 25.5 hours of overtime per week.

79.     In total, Plaintiff Xie is entitled to $373.83 in unpaid overtime pay.

D. Plaintiff Tang

80.     Plaintiff Tang worked at the Restaurant from January 23, 2015 until
August 31, 2015. *Id.* at 107. Plaintiff Tang's January and February 2015 claims
are barred by the statute of limitations. *See* supra ¶ 20.

81.     Plaintiff Tang was paid $1500 twice a month. Trial Tr., Vol. 1 at
107.

82.     Plaintiff Tang worked six days a week. *Id.* at 109. Plaintiff Tang
took off on Wednesdays. *Id.*

83.     Plaintiff Tang worked 65.5 hours per week. *See* supra ¶ 65.

84.     Therefore, Plaintiff Tang was paid $692.31 per week and at an hourly
rate of $10.57 per hour.

85.     Plaintiff Tang worked 25.5 hours per week in overtime.

86.     In total, Plaintiff Tang is therefore entitled to $3,503.96 in unpaid

28

overtime pay.

E. Plaintiff Yang

87.     Plaintiff worked at the Restaurant from August 8, 2015 to July 31, 2016. *Id.* at 121-122. Plaintiff Yang took one week off at the end of May 2016. *Id.* at 122.

88.     Plaintiff Yang was paid $1500 twice a month from August 8, 2015 to September 30, 2015. *Id.* at 125. Starting October 1, 2015 until July 31, 2016, Plaintiff Yang was paid $1600 twice a month. *Id.* at 125.

89.     Plaintiff Yang worked 65.5 hours per week from August 8, 2015 until March 2, 2016. *See* supra ¶ 65.

90.     Plaintiff Yang worked 54.5 hours per week from March 2, 2016 to July 31, 2016. *See* supra ¶ 65.

91.     Plaintiff Yang was paid $10.57 per hour in August and September 2015.

92.     Plaintiff Yang is entitled to $943.37 in overtime for the period August 8, 2015 to September 30, 2015.

93.     Plaintiff Yang was paid $11.27 per hour from October 1, 2015 through March 1, 2016.

94.     Plaintiff Yang is entitled to $3,161.24 for the period October 1, 2015 to March 1, 2016.

29

95.     Plaintiff Yang was paid $13.55 per hour from March 2, 2016 through

July 31, 2016, when Plaintiff Yang worked 54.5 hours per week.

96.     Plaintiff Yang is entitled to $1,964.75 in overtime pay for this

period.[14]

97.     In total, Plaintiff Yang is entitled to $6,069.36 in unpaid overtime

pay.

F.  Plaintiff Geng

98.     Plaintiff Chuan Geng worked at the Restaurant from January 31,

2015 until the end of July 2016. Trial Tr., Vol. 2 at 11. Plaintiff Geng's January

and February 2015 claims are barred by the statute of limitations. *See supra* ¶ 22.

99.     Plaintiff Geng took one vacation lasting two weeks in August 2015.

Trial Tr., Vol. 2 at 11.

100.    Plaintiff Geng worked 65.5 hours per week. *See* supra ¶ 65.

101.    Plaintiff Geng worked six days per week and typically took his day

off on Monday or Wednesday. *Id.* at 13.

102.    In March and April 2015, Plaintiff Geng was paid $2200 per month.

*Id.* at 14, 24.

---

[14] This overtime pay was calculated for 14.5 hours of overtime per week, since Plaintiff Yang testified to working 54.5 hours per week during this period. Trial Tr., Vol. 1 at 130. Furthermore, the Court considered that Plaintiff Yang testified to taking a week of vacation at the end of May 2016.

103. From May 1, 2015 until August 21, 2015, Plaintiff Geng was paid $2400 per month. *Id.* at 24-25.

104. From September 5, 2015 until the end of July 2016, Plaintiff Geng was paid $3000 per month. *Id.*

105. In March and April 2015, Plaintiff Geng's hourly rate was $7.75.

106. Plaintiff Geng is therefore entitled to $790.50 for this period.

107. From May 1, 2015 to August 21, 2015, Plaintiff Geng's hourly rate was $8.46.

108. Plaintiff Geng is therefore entitled to $1,785.06 for this period.

109. From September 5, 2015 through July 31, 2016, Plaintiff Geng's hourly rate was $10.57.

110. Plaintiff Geng is owed $6,468.84 for this period.

111. In total, Plaintiff Geng is entitled to $9,044.40 in unpaid overtime pay.

## IV. Counts V and VI: Tip Credit Claims

112. In Counts V and VI, Plaintiffs contend that, in violation of Section 203(m) and (t) of the FLSA as it read during the relevant time period, Defendants sought to retain tips received by employees, and then Defendants took a tip credit that placed their employee's wage below the minimum wage. ECF No. 122. With respect to Plaintiffs Tong, Geng, and Yang, Plaintiffs contend that Defendants

"split up their pay into two[,] sometimes three . . . sections: the part that was 'pay' and the part that was 'tips.'" *Id.* at ¶ 39. Based on these accounting notations alone, Plaintiffs looked at the amounts marked "pay"[15] and calculated "Plaintiffs' hourly pay" with that amount. *Id.* Therefore, Plaintiffs contend that "the calculated hourly 'pay' before 'tips' fell below the FLSA's and PAMWA's $7.25 per hour minimum wage." *Id.*

113. Plaintiffs contend that "[i]t is therefore clear that, at least in their own minds, the Defendants were taking the tip credit with respect to Plaintiffs' wages, and that that tip credit brought Plaintiffs' rates well below the minimum wage." *Id.*

114. Plaintiffs conclude that "Defendants were entitled neither to take the tip credit, nor . . . were they entitled to any portion of Plaintiffs' tips." *Id.*

115. First, 29 U.S.C. § 203(m) stated during the relevant period, "[i]n determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to . . . (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [$2.13 per hour]; and (2) an additional amount on

---

[15] The Court notes that this calculation differs from the way Plaintiffs purported to calculate overtime pay, wherein they took the total salary, added housing and meals, and divided that by 40 hours per week. ECF No. 119.

32

account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title." 29 U.S.C. § 203(m).

116. "[T]he FLSA does not preclude an employer from paying a tipped employee a cash wage of $2.13 per hour provided that the employee's tips make up the difference between the $2.13 cash wage and the current federal minimum wage." *Belt v. P.F. Chang's China Bistro, Inc.,* 401 F. Supp. 3d 512, 520–21 (E.D. Pa. 2019).

117. "The difference between the cash wage and the federal minimum wage is known as the 'tip credit.'" *Id.* (citing 29 C.F.R. § 531.56(d)).

118. Even assuming Plaintiffs' calculations and assumptions are correct, Plaintiffs have failed to show that Plaintiffs' cash wages were lower than $2.13 per hour. *See* ECF No. 122 at ¶ 39 (calculating the lowest hourly rate at $3.46 per hour).

119. In addition, even if Plaintiffs are correct that Defendants did take a tip credit, Plaintiffs have failed to show that their cash wage and tips do not add up to the current federal minimum wage of $7.25 per hour, as this Court has dismissed the only remaining minimum wage claim. *See* supra ¶ 36.

120. Furthermore, Plaintiffs have failed to present credible evidence that Defendants took a tip credit from Plaintiffs. During the bench trial, Plaintiffs'

33

counsel asked Defendants about documents exchanged with Defendants' accountant which purported to divide Plaintiffs' pay into two categories of "cash" and "tips." Trial Tr., Vol. 2 at 59. However, Defendants credibly stated that they did not "make a distinction between tips and base pay" in the payroll and just "put [everything] all together with the salary, not [] separate by the tip and the pay." *Id.* at 60. Defendant Yeng-Lung Kuo credibly stated that this accounting document was kept only for herself and that she did not show this document to her employees. *Id.* Plaintiffs and Defendant Yeng-Lung Kuo testified that Plaintiffs received their pay in envelopes, by cash or check, with *one amount* (the amount of their semi-monthly or monthly salary) written on the outside of the envelope. Trial Tr., Vol. 1 at 15, 74, 101, 108, 126; Vol. 2 at 1516.

121. Therefore, Plaintiffs have failed to state a claim for violation of 29 U.S.C. § 203(m) and (t) because Plaintiffs' purported "cash wage" pay was not below $2.13 per hour, Plaintiffs' salary including the purported "cash wage" and "tips" was not below the required minimum wage, and Defendants did not take a tip credit.

122. Finally, during the relevant period, the FLSA did not contain a cause of action under 29 U.S.C. § 203 for employees whose tips were taken by their employers. *See Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 232–33 (3d Cir. 2019) ("Congress's recent amendment of the FLSA does not change the analysis. That

34

occurred in 2018. Through the amendment, Congress added a cause of action under the FLSA for employees whose tips are taken by their employers. *See* 29 U.S.C. § 203(m)(2)(B); 29 U.S.C. § 216(b)).

123. Therefore, this Court finds that Plaintiffs are not entitled to recover under Counts V and VI.

## V. Liquidated Damages

124. Lastly, Plaintiffs contend that "the FLSA allows a plaintiff who prevails on a claim of underpayment of wages to recover liquidated damages equal to 100% of the total amount of the wages found to be due unless the employer can offer a good faith basis for believing that the underpayment was lawful." ECF No. 122 at ¶ 44.

125. The FLSA states, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. 216(b).

126. "To avoid mandatory liability for liquidated damages, an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the [FLSA]." *Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 433 (3d Cir. 2017) (citing 29 U.S.C. § 260;

*Martin v. Selker Bros.*, 949 F.2d 1286 (3d Cir. 1991)).

127. "The good faith requirement is 'a subjective one that requires that the employer have an honest intention to ascertain and follow the dictates of the [FLSA].'" *Id.* (quoting *Martin v. Cooper Elec. Supply Co., 940 F.2d 896 (3d Cir. 1991)*). "The reasonableness requirement is an objective standard." *Id.* (citing *Cooper Elec. Supply*, 940 F.2d at 907).

128. "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Cooper Elec. Supply Co.*, 940 F.2d at 908.

129. "The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute." *Williams v. Tri-Cty. Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984) (citation omitted). "Moreover, the employee need not establish an intentional violation of the Act to recover liquidated damages." *Id.* "Instead, the employer must affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements." *Id.*

130. "Ignorance alone will not exonerate the employer under the objective reasonableness test." *Id.* (citation omitted).

131. "If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district

36

court is without discretion to deny liquidated damages." *Id.* (citation omitted).

132. While this Court does not find that Defendants showed "reckless disregard" for whether its conduct was prohibited by the FLSA, Defendants have not shown that they had an "honest intention to ascertain and follow the dictates of the" FLSA. *Id.*

133. Defendants testified credibly that they were ignorant of the FLSA overtime requirements, though they tried to appease their employees by raising their pay and giving them additional days off.

134. Defendants noted one instance in which they were potentially alerted to the FLSA's overtime requirements. Defendants had received a letter from the Department of Labor discussing overtime but threw it out because they did not understand what it was. Trial Tr., Vol. 2 at 49.

135. However, Defendants have not proffered any evidence outside of ignorance to show that they acted in good faith by affirmatively attempting to ascertain the FLSA's requirements.

136. Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to liquidated damages equal to 100% of the total amount of the wages found to be due.

137. Plaintiff Tong is therefore entitled to $10,954.14 in overtime pay plus an additional $10,954.14 in liquidated damages, for a total of $21,908.28.

138.   Plaintiff Xie is therefore entitled to $373.83 in overtime pay plus $373.83 in liquidated damages, for a total of $747.66.

139.   Plaintiff Tang is therefore entitled to $3,503.96 in overtime pay plus an additional $3,503.96 in liquidated damages, for a total of $7,007.92.

140.   Plaintiff Yang is therefore entitled to $6,069.36 in overtime plus an additional $6,069.36 in liquidated damages, for a total of $12,138.72.

141.   Plaintiff Geng is therefore entitled to $9,044.40 in overtime pay plus an additional $9,044.40 in liquidated damages, for a total of $18,088.80.   A verdict will issue simultaneously with this Memorandum.

DATE: 2-19-2020

CHAD F. KENNEY, JUDGE