**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

--------------------------------------------------------X

RUI TONG,
WEIJIAN TANG,
YA-TANG CHI a/k/a Tom Chi,
CHUAN GENG,
KUN YANG, and
JUNYI XIE

                Plaintiffs

       v.

HENDERSON KITCHEN INC.
     d/b/a Pinwei Restaurant;
CHAO HSIUNG KUO
     a/k/a Gary Kuo, and
YENG-LUNG KUO,
              Defendants.

          **Case No. 17-cv-01073**

--------------------------------------------------------X

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

**I.**     **INTRODUCTION**

      Defendants, by their undersigned Counsel, submits this Opposition to Plaintiffs' Motion for

Attorneys' Fees and Costs, as follows:

      After a two day bench trial on October 28 and 29, 2019, and the parties' post trial

submissions, this Court issued a Memorandum (ECF. No. 124) and an Order-Verdict (ECF No. 125)

on February 19, 2020, rejecting **all** of Plaintiffs' claims except for modest overtime infractions for 5

of the 6 Plaintiffs',[1] amounting to $59,891.38 (including liquidated damages) or **9.26%** of Plaintiffs'

requested unpaid wages of $646,600.12 (including liquidated damages) (Plaintiffs' Proposed Finding

of Fact No. 91 (ECF No. 122) and damages calculation chart at ECF No. 88-1).   Almost four months

---

[1] None of Plaintiff Chi's claims were successful in that they were barred by the statute of limitations. (ECH 124 at ¶56).

1

thereafter, Plaintiffs filed a corrected Motion for Attorneys' Fees and Costs (ECF No. 129) which is now the subject of this Opposition memorandum. The gateway issue for the disposition of the Motion is its timeliness under Rule 54(d)(2)(B)(i). Any motion for Plaintiffs' attorneys' fees was required to be filed no later than March 4, 2020, 14 days following the Court's February 19 Memorandum and Verdict-Order. Yet, in inexplicable disregard for the time in which to file their Motion, Plaintiffs delayed their filing until June 15, 2020. Counsel offered only that the delay was due to "excusable neglect", namely, that "[Counsel's] ability to do business has been negatively affected since" the onset of the coronavirus in March 2020, and because "the Chinese-American community where [Troy Law] practices, panic and chaos were already beginning to set in because of the COVID-19 pandemic." (Plaintiffs' Supporting Memorandum (ECF No.129 at 2). This anemic rationalization for a more than three month delay proffered by Plaintiffs is preposterous as discussed further below.

Accordingly, for the reasons set forth more fully below, it is submitted that Plaintiffs' Motion must be stricken. Alternatively, Plaintiffs have not shown entitlement to any attorneys' fees, and in any event, any fees awarded should not exceed 7.8% of the requested $135,168 in fees, **or $10,545.84**.[2]

## II.  PERTINENT FACTS AND PROCEDURAL HISTORY

### A.  Statement of Plaintiffs' Allegations and Claims

As the Court has repeatedly been presented with the relevant facts in this case, only a brief restatement is necessary here. Plaintiffs' filed their initial Complaint on March 10, 2017.  The case

---

[2] Plaintiffs sought alleged unpaid wages in the amount of $383,300.06 exclusive of liquidated and willful damages. The Court only awarded Plaintiffs **unpaid wages** in the amount of $29,945.69 or 7.8% of the demanded unpaid wages. Thus, $29,945.69 amounts to 7.8% of Plaintiffs claims and 7.8% of the requested fees of $135,168 amounts to $10,545.84.

was assigned to the Honorable Judge R. Barclay Surrick. In their initial Complaint, Plaintiffs

asserted that Defendants violated the Federal [sic] Labor Standards Act ("FLSA"), the Pennsylvania

Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law

("PWPCL") for various alleged willful and unlawful employment policies, patterns and/or practices

in their operation and/or management of the employees of Defendant Henderson Kitchen d/b/a/ Pin

Wei Restaurant.[3]  **These claims were asserted by each one of the six individual Plaintiffs.**

Plaintiffs also brought this action as a collective action and as class representatives on behalf of all

other and former non-exempt employees of Defendants.

On April 11, 2017 (ECF No. 14), Defendants filed a Partial Motion to Dismiss Counts I, II,

V, VI, and VII of the original Complaint (ECF No.1). Having seen Defendants' Motion to Dismiss,

Plaintiffs chose to file an Amended Complaint on May 2, 2017 (ECF No. 17) to address the

deficiencies pointed out in the Partial Motion to Dismiss. On the allegations of the Amended Complaint,

Plaintiffs and the putative collective and class, claimed that Defendants violated the Federal [sic] Labor

Standards Act ("FLSA") for "various willful and unlawful employment policies, patterns and/or practices" in

their operation and/or management of the employees of Pin Wei Restaurant. (Amended Complaint at ¶1).

In particular, **only** Plaintiffs Geng and Xie claimed in **Count I** that Defendants violated the FLSA by

failing to pay these two Plaintiffs and putative collective class member[4] employees of the Restaurant (1) the

minimum wage required by the FLSA. At trial only the minimum wage claim pf Plaintiff Geng remained for

disposition.  **[THESE CLAIMS WERE REJECTED BY THE COURT, SO, PLAINTIFF GENG AND**

**PUTATIVE PLAINTIFFS WERE NOT THE PREVAILING PARTY THEREON AND THERE IS NO**

**ENTITLEMENT TO ATTORNEYS' FEES RELATING THERETO].**

---

[3] Evidencing Counsels' inattention to the nature of their claims in preparing their Complaint, on these allegations,
Plaintiffs, and putative class members, also alleged that this Court "has supplemental jurisdiction over the **New York
Labor Law claims pursuant to 28 U.S.C. §1367(a)"** without citing a single connection or link between Plaintiffs,
Defendants, the Restaurant and the New York Labor Law. (Doc. No.1 at ¶6). Accordingly, there can be no
entitlement to attorneys' fees for time expended on matters related to the inconscient **drafting** of the original Complaint.

In **Count III**, all named Plaintiffs claimed that Defendants violated the overtime wage payment required by the FLSA**. [ON THESE CLAIMS THE COURT FOUND FOR THE PLAINTIFFS IN THE AMOUNT OF ONLY $29,945 PLUS LIQUIDATED DAMAGES – THIS WAS THE ONLY CLAIM ON WHICH PLAINTIFFS PREVAILED].**

Also, on the allegations of **Count II**, **only** Plaintiffs Geng and Xie, and putative class members[5] claimed the same minimum wage violations as in Count I relying PMWA, and all named Plaintiffs claim unpaid overtime violations of the PMWA (**Count IV**). **[THESE CLAIMS WERE REJECTED BY THE COURT, AND ACCORDINGLY, PLAINTIFFS WERE NOT THE PREVAILING PARTY THEREON AND THERE IS NO ENTITLEMENT TO ATTORNEYS' FEES RELATING THERETO].**

Also, Plaintiffs asserted in **Count V and Count VI** that Defendants allegedly "illegally" retained Plaintiffs' "Tips" in violation of the FLSA and the PAMWA. **[THESE CLAIMS WERE REJECTED BY THE COURT, AND ACCORDINGLY, PLAINTIFFS WERE NOT THE PREVAILING PARTY THEREON AND THERE IS NO ENTITLEMENT TO ATTORNEYS' FEES RELATING THERETO].**

---

4 Defendants, Motion to Decertify the Conditional FLSA Collective Certification of March 27, 2019, was filed with the Court on September 18, 2019, as prescribed by the Court's scheduling order.  Plaintiffs' response to that Motion was due on either September 27, 2019 or October 2, 2019**.  Plaintiffs, however, did not file any response to that motion and disavowed any claims for a collective and/or class group.** By Order of October 7, 2019, the Court granted that Motion and ordered that "the matter will proceed with six individual Plaintiffs." (ECF No. 89). Thus, there remained in this case only the claims of the six named Plaintiffs in their individual capacities. The Plaintiffs **abandoned** the collective and class claims after extensive discovery and briefing. As Plaintiffs' Counsels' time records show (Doc. No. 129-2),  for the periods from 2/5/19 to 6/10/19 and from 6/14/19 to 6/17/20, Plaintiffs' Counsel claims attorneys' fees for **59.32 hours** amounting to **$28,886** expended on the abandoned collective and class claims for which Plaintiffs now seek to recover attorney fees. In that Plaintiffs did not prevail on their collective and class claims, they have **no** entitlement to attorneys' fees relating thereto.

Also, in **Count VII** Plaintiffs alleged that they were not paid "all wages owed to them" in violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§260.1 *et seq*. ("PWPCL"). **[THESE CLAIMS WERE REJECTED BY JUDGE SURRICK, AND ACCORDINGLY, PLAINTIFFS WERE NOT THE PREVAILING PARTY THEREON AND THERE IS NO ENTITLEMENT TO ATTORNEYS' FEES RELATING THERETO].**

Lastly, Plaintiffs sought liquidated damages and damages for willful violation of the FLSA. **[WITH THE EXCEPTION OF THE AWARD OF LIQUIDATED DAMAGES FOR THE OVERTIME CLAIMS VIOLATIONS, THESE CLAIMS WERE REJECTED BY THE COURT, AND ACCORDINGLY, PLAINTIFFS WERE NOT THE PREVAILING PARTY THEREON AND THERE IS NO ENTITLEMENT TO ATTORNEYS' FEES RELATING THERETO EXCEPT AS NOTED ABOVE WITH RESPECT TO COUNT III].**

Despite Judge Surrick's dismissal of the Plaintiffs' minimum wage claims, Plaintiff Geng maintained these claims through trial despite the unequivocal dismissal by Judge Surrick of minimum wage claims and the PWPCL claims, which dismissal became the law of the case. The dismissal of the minimum wage claims by Judge Surrick was based on the wages and hours worked alleged by Plaintiffs and the performance of a simple mathematical calculation showing that the minimum wage rate of $7.25 per hour had been met by the Defendants. Rather, than performing the same calculations before making their wage allegations, and thereby eliminating those claims from this litigation, the Plaintiffs persisted in those claim for Plaintiff Geng through trial despite the sheer frivolity of those claims. Accordingly, attorneys' fees for work rendered on those frivolous claims are wholly unwarranted and must be rejected.

B.      **Current Procedural Status of this Case**

The Court conducted a non-jury trial on October 28 and 29, 2019, at which witnesses were heard, evidence presented and arguments made. Upon conclusion of the evidence, Defendants made a Motion for Involuntary Dismissal, docketed on October 30, 2019 (ECF No. 111), and which the Court formally denied by Order of November 8, 2019 (ECF No. 114). After the parties' post trial submissions, the Court by its February 19, 2020 Memorandum and Verdict finally disposed of all issues and claims then pending. Accordingly, the only item extant in this litigation is Plaintiffs' Motion for Attorneys' Fees and Costs which Defendants now contest.

**III.    ARGUMENT**

A.      **Defendants' Motion for Attorneys' Fees Is Untimely and Must be Stricken**

1.      **Failure to Comply with Rule 54(d)(2)(B)(1) F.R.C.P.**

Rule 54(d)(2)(B)(i) specifies the time in which a party is to file a motion for attorney's fees, as follows:

> (a) *Definition; Form.* "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings.
> . . .
>
> (A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
>
> (B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:
>> (i) **be filed no later than 14 days after the entry of judgment;**
>> (Emphasis added)

The gateway issue for the disposition of Defendants' Motion is its timeliness under Rule 54(d)(2)(B)(i). Any motion for Plaintiffs' attorneys' fees was required to be filed no later than March

4, 2020. Yet, in inexplicable disregard for the time in which to file their Motion, Plaintiffs delayed

their filing until June 15, 2020.  The Court's February 19, 2020 Memorandum and Verdict

constituted a "judgment" within the meaning of Rule 54.  A final judgment in federal court is "The

last decision from a **court** that resolves all issues in dispute and settles the parties' rights with respect

to those issues. A **final judgment** leaves nothing except decisions on how to enforce the **judgment**,

whether to award costs, and whether to file an appeal." See Wex, Legal Information Institute at the

Cornell Law School, https://www.law.cornell.edu › wex. (Emphasis added).

      "Judgment" is commonly defined as follows:

"*A decision by a court or other tribunal that resolves a controversy and determines the rights and
obligations of the parties.*

  A judgment is the final part of a court case. A valid judgment resolves all the contested issues and termin-
ates the lawsuit, since it is regarded as the court's official pronouncement of the law on the action that
was pending before it. It states who wins the case and what remedies the winner is awarded. Remedies
may include money damages, injunctive relief, or both. A judgment also signifies the end of the court's
jurisdiction in the case. The Federal Rules of Civil Procedure and most state rules of civil procedure allow
appeals only from final judgments.

 A judgment must be in writing and must clearly show that all the issues have been adjudicated. It must
specifically indicate the parties for and against whom it is given. Monetary judgments must be definite,
specified with certainty, and expressed in words rather than figures."
 https://legal-dictionary.thefreedictionary.com/Judgment.

      It is self-evident that the Court's February 19, 2020 Memorandum and Verdict

constitute a "judgment". Those rulings were rendered and docketed after a bench trial at which the

parties had full opportunity to present all of their claims and defenses and to present post trial

submissions; they constitute the last decision from this **Court**  that resolved all of the issues in

dispute and settled the parties' rights with respect to those issues; the Court's written Memorandum

and Verdict resolved all of the contested issues and terminated the lawsuit, since it is

regarded as the Court's official pronouncement of the factual findings and the law in the action that

was pending before it (see the Clerk of Court's Civil Docket Sheet for this case wherein this case is

marked "**CLOSED**"); and makes clear that all of the issues in the case had been adjudicated. See,

*e.g.,* Bane *v. City of Philadelphia, C.A. No*. 09-2798 (E.D. Pa. Aug. *T*26, 2010) (The two requirements for entry of judgment under Rule 54(b) are: (1) that the order at issue be a final judgment, meaning the "ultimate disposition of an individual claim entered in the course of a multiple claims action," and (2) that there must be "no just reason for delay," taking into account both judicial administrative interests and the equities involved. *Curtiss-Wright Corp. v. Gen. Elec. Co*., 446 U.S. 1, 7-8 (1980) *(quoting Sears, Roebuck Co. v. Mackey,* 351 U.S. 427, 436-37 (1956)); *Gerardi v. Pelullo,* 16 F.3d 1363, 1371 (3d Cir. 1994)*; see also, Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495 (1989)*; eds Adjusters, Inc. v. Computer Sciences Corp.,* 149 F.R.D. 86, **88** (E.D. Pa. 1993) (28 U.S.C. Section 1291(Final Decisions of District Courts) defines a final judgment as a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment); *In re Diet Drugs Prods. Liab. Litig.,* 401 F.3d 143, 154 (3d Cir. 2005) (It is well-established that, with certain exceptions, the Court of Appeals generally has jurisdiction to review only "final decisions" of the district Court pursuant to 28 U.S.C. §1291); *Bell Atlantic PA, Inc. v. PA Public Utility Comm'n,* 273 F.3d 337, 342 (3r Cir. 2001) ("A decision ordinarily is final when it ends the litigation and leaves nothing for the court to do but execute the judgment.").

Accordingly, Defendants' failure to file their Motion for attorneys' fees by March 4, 2020 is fatal and must be stricken in that Plaintiffs failed to file their Motion within 14 days of the Courts' February 19 Memorandum and Verdict-Order

**2.    Assertion of "Excusable Neglect" for the Failure to Timely File the Motion is Baseless**

In an effort to overcome the untimeliness of their Motion, Defendants posit a fatuous proposition that the delay was caused by COVID-19 and the negative effect that the virus had on Counsels' "ability to do business". (Defendants' Memorandum at 2).  They speculate that the Chinese community was in "panic and chaos" at that time.

The assertion that Counsels' ability to do business was negatively affected from 2/19/20 to the 6/5/20 initial filing of the Motion due to COVD-19 is belied by even a cursory review of the most recent 150 plus additional cases Counsel certifies to have been involved in during that period. For example, Plaintiff's Counsel (Troy, Schweitzer and Lim) filed at least three Complaints in the Southern District of New York in March, 2020, at the height of the virus in New York (see 20-cv-02641; 20-cv-02653; 20-cv-02633), as well as at least two amended Complaints during the COVID-19 period they allege (see 19-cv-11924; 19-cv-11895). Also, during the claimed COVID-19 period, Counsel engaged in substantial substantive work including such things as opposition to dismissal motion, class certification litigation and motion to disqualify. Indeed, in Case No. 19-cv-11895, the Court issued a COVID-19 Order providing for the continued processing of the case.

Furthermore, Counsels' Certification shows that the instant Motion took only 4.5 hours on 6/8/20 to prepare which is understandable (i) since the fee application largely tracks Counsels' fee application in *Zhang v. Chongqing*, No. 18-cv-10559 (D.N.J. 11/26/19)(Unpublished), cited by Counsel in his Certification (ECF No 129-1 at ¶23); (ii) since the data, case records and billings are all computerized and available in an instant; and (iii) since Counsel undoubtedly has available to them (as the afore cited active case records demonstrate) strategically aligned technology, systems and processes to easily enable work from home, finding and analyzing materials quickly and efficiently, architecture supporting the delivery of legal services, and other insourced and outsourced solutions to generating work product. Moreover, none of the COVID-19 related temporary Notices and Standing Orders of the Eastern District of Pennsylvania alter or otherwise suspend the filing of materials electronically with the Court or remote access to the Court. Indeed, the Court's Standing Order of 5/29/20 expressly provides for the continuation of electronic filing, implicitly, if not explicitly, anticipating that counsel will continue the processing of their cases (see

9

https://www.paed.uscourts.gov/documents/standord/Standing%20Order%20%20Second%20Extension%20of

%20Adjustments.pdf):

> **Clerk's Office Operations and Electronic Filing**
>
> 13. The Clerk's Office in the James A. Byrne U.S. Courthouse in Philadelphia will remain open and operational, but public access to the Clerk's Office will continue to be restricted until further notice.
>
> 14. All registered users of the CM/ECF system are required to electronically file any case-related documents that can be filed electronically through the CM/ECF system, including complaints, amended complaints, and third-party complaints in civil cases; notices of removal; and petitions for writs of habeas corpus. The restrictions set forth in Local Civil Rule 5.1.2, subsection 2(b), stating that initial papers in civil cases cannot be electronically filed by counsel shall remain suspended until further notice.
>
> 15. Any document that cannot be electronically filed should be emailed in PDF format to the following address: PAED_DOCUMENTS@PAED.USCOURTS.GOV. When emailing documents, filers should indicate the case number and the title of the document or pleading in the subject line of the email.

Lastly, the assertion of "panic and chaos" among the Chinese community is so unrelated to Counsels' preparing and filing the instant Motion as to be rejected out of hand.

**B.**     **Legal Standard for Award of Attorneys' Fees under the FLSA**

The Court in *Shattuck v. Harmon Heating & Air Conditioning, LLC*, C.A. No. 18-cv-1507 (E.D. Pa. 7/16/19) concisely summarized at page 2-3 of the Court's Memorandum Opinion, the legal standards to be considered in evaluating a request by a successful plaintiff for attorneys' fees under the FLSA:

> The FLSA provides that the prevailing party is entitled to "reasonable attorney's fees" and "costs of the action." 29 U.S.C. § 216(b). The district court has the discretion to award reasonable attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The district court is afforded high discretion in determining the proper amount of the award. *Bell v. United Princeton Prop., Inc.,* 844 F.2d 713, 721 (3d Cir. 1989).
>
> The standard for calculating a proper award for attorney's fees is the lodestar method. "The lodestar formula multiplies the reasonable number of hours expended by a reasonable hourly rate." *Squires Golf Club v. Bank of America*, No. 10-6734, 2011 WL 1050426, at *1 (E.D. Pa., Mar. 22, 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In reviewing an award of reasonable attorney's fees, "it is necessary that the Court `go line, by line, by line'

through the billing records supporting the fee request." Id. (citing *Evans v. Port Auth. Of N.Y. & N.J.* 273 F.3d 346, 362 (3d Cir. 2001)). "The lodestar is presumed to be the reasonable fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). **The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable.** *Id.* **"To meet its burden, the fee petitioner must `submit evidence supporting the hours worked and rates claimed.'"** Id. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (Emphasis added).

However, the district court has the discretion to make certain adjustments to the lodestar" and the party seeking any such adjustment "has the burden of proving that an adjustment is necessary." *Id*. "The court also can deduct hours when the fee petition inadequately documents the hours claimed." *Id.* Duplicative, redundant or excessive fees   should  not  be  rewarded. *Interfaith Community Org. v. Honeywell Int'l, Inc.,* 426 F.3d 694 (3d Cir 2005).

*See also, Shesko v. City of Coatesville,* 2004 U.S. Dist. LEXIS 16793 (E.D. Pa. 8/24/04).

The "success" of an FLSA plaintiff is determined by comparing the relief requested to the relief

obtained: "The failure to receive the degree of relief requested may be indicative of a failure to

achieve sufficient success in the litigation to justify a fully compensatory attorneys' fee."

*Jackson v. McKoy,* 809 F.2d 785 (4th Cir. 1987). A fee award "must be fair" but is not intended

to "produce windfalls to attorneys." *Martin v Cavalier Hotel Corp.,* 48 F.3d 1343, 1359 (4th Cir.

1995).

Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the **amount of damages awarded as compared to the amount sought.** [citation omitted] Such a comparison promotes the court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." [citation omitted] **Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors [set forth in *Johnson*] bearing on reasonableness [citation omitted] or multiplying "the number of hours reasonably expended…by a reasonable hourly rate [citation omitted]."**

*Farrar v. Hobby,* 506 U.S. 103, 114-115 (1992) (Emphasis added).

We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorneys' fees.... [W]here the plaintiff achieved only limited success, the district court should award only the amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933 (1983).

When a plaintiff obtains **"but an insignificant portion of the relief she originally**

requested and ... has failed to prevail on her most consequential claims, she is entitled to only a

fraction of her attorneys' fees." *Hetzel v. County of Prince William*, 89 F.3d 169, 173-74 (4th Cir.

1996) (emphasis added); see also, *Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647,651 (D. Md.

1998) ("If the plaintiff achieves only a limited or partial success, the full award of attorneys' fees

may be excessive, even if all the claims are interrelated."

     The court typically is to apply the "lodestar" approach, i.e., consider the "number of

reasonable hours expended times a reasonable rate." *Brodziak v. Runyon,* 143 F.3d 194, 196

(1998) (emphasis added). The court may consider the twelve "*Johnson*" factors [set forth in

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (1974)] which are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*ld.*, at 196, citing *EEOC v. Service News Co., 898 F.2d 958* (4th Cir. 1990), quoting *Barber v.*

*Kimbrell's Inc.,* 577 F.2d 216 (4th Cir. 1978).

     Most recently, **on 6/23/20**, the Court in *Morgan v. RCL Management, LLC,* C.A. No. 18-

cv-00800 (E.D. Pa.  June 23, 2020) at 7-8, expounded on the method of assessing the

reasonableness of attorneys' fees to be paid to a successful FLSA plaintiff, stating:

>     Courts within the Third Circuit generally apply the "percentage-of-recovery" method when  assessing the reasonableness of an attorney's fee award. See, e.g.," Mabry v. Hildebrandt, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015). "In this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20-45%." Id.at *4 (collecting cases). Plaintiffs' request for attorneys' fees of $19,640.00 falls below that range, accounting for approximately seventeen percent of the total recovery ($114,332.50). (Footnote omitted).

. . .

Setting aside this work performed, the reasonableness of counsel's requested fee is additionally confirmed by considering the award that would have been permitted when applying the "lodestar" method. The Third Circuit recommends that "district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." In re *AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun,* 256 F.3d 181, 184  (3d Cir. 2001).

Here, Plaintiffs' request for attorneys' fees in the amount of $135,203 amounts to 2.25 times the total recovery of $59,891.38 (including liquidated damages), well above the percentage recovery range of 20-45%.

**Accordingly, the attorneys' fees request is significantly unreasonable given the amount of the recovery. Additionally, as recommended by the Third Circuit, the following analysis in Part C. below, using the lodestar method to "cross-check" the reasonableness of a percentage-of-recovery fee award, similarly demonstrates the unreasonableness of the requested $135,203 in attorneys' fees.**

C.      **Plaintiffs Were Substantially Unsuccessful in This Litigation and the <u>Attorneys' Fees They Have Requested are Grossly Unreasonable</u>**

1.      **Abandonment of Collective Action and Class Claims**

Plaintiffs filed this case as a collective action and sought to represent a class of what they claimed was 40 to 50 putative plaintiffs.  On March 5, 2019, Plaintiffs filed a Motion for conditional certification of a collective action (ECF No. 37) with accompanying affidavit (ECF No. 38) and supporting memorandum (ECF No. 39). Defendants opposed a conditional certification and on March 27, 2019, the Court granted a conditionally certified collective action. Thereafter, very extensive discovery relating to the collective was pursued by Plaintiffs, notices were drafted and sent to putative collective members.  **Defendants then filed a Motion and supporting Memorandum to**

Decertify the Conditional FLSA Collective Certification of March 27, 2019 (ECF Nos. 85 and 86) on September 18, 2019, as prescribed by the Court's scheduling order.  Plaintiffs' response to that Motion was due on either September 27, 2019 or October 2, 2019. **Plaintiffs, however, did not file any response to that motion and disavowed any claims for a collective and/or class group.** By Order of October 7, 2019, the Court granted that Defendants' Motion and ordered that "the matter will proceed with six individual Plaintiffs." (ECF No. 89). Thus, there remained in this case only the claims of the six named Plaintiffs in their individual capacities. The Court then held the bench trial on the individual claims of the six Plaintiffs with their Counsels' full consent and acquiescence.

Despite the relinquishment of the collective action claims and Plaintiffs **abandoned** of those claims after this extensive discovery and briefing, Plaintiffs now seek to be paid attorneys' fees for their Counsels' fanciful and predictably doomed pursuit of the unsuccessful collective action  As Plaintiffs' Counsels' time records show (Doc. No. 129-2),  for the periods from 2/5/19 to 6/10/19 and from 6/14/19 to 6/17/20, Plaintiffs' audaciously claimed attorneys' fees for <u>59.32 hours</u> expended on the abandoned collective and class claims for which Plaintiffs now seek to recover attorney fees, as follows:

| <u>Name:</u> | <u>Hours:</u> | <u>Hourly Rate:</u> | <u>Total:</u> |
|---|---|---|---|
| J. Troy | 38.98 | $550 | $21,439 |
| A. Dong | 2.67 | $300 | $801 |
| A. Schweitzer | .58 | $350 | $203 |
| P. Kilaru | 14.59 | $200 | $2918 |
| M. Huang | 1.75 | $150 | $262.5 |
| K. Willard | <u>.75</u> | $350 | <u>$262.5</u> |
| | **59.32** | | **$25,886** |

In that Plaintiffs did not prevail in any sense on their collective and class claims, they have no entitlement to attorneys' fees relating thereto. Accordingly, the requested attorneys' fees **must be reduced by $25,886.**

> ### 2.   Unsuccessful On All Claims Except Count II Overtime Claim and Related Liquidated Damages

According to the Court's Memorandum at 1-2, only the following claims from Plaintiffs' Amended Complaint remained in the case for the Court's final determination:

> (1) minimum wage claims (Counts I and II) on behalf of Geng alone;
>
> (2) unpaid overtime claims (Counts III and IV on behalf of all Plaintiffs;
>
> (3) illegal tip retention claims (Counts V and VI) on behalf of 5 of the 6
>
> Plaintiffs in violation of the FLSA and PMWA.

Other claims raised by Plaintiffs were liquidated damage and "reckless disregard" damage (Court Memorandum at Part V. and ¶132). As shown on pages 3-5 *supra*, the Plaintiffs prevailed only on Count II (Overtime) and related liquidated damages, and lost on all of the remaining claims. Accordingly, only 5 Plaintiffs (Chi's claims were precluded by the statute of limitations) were awarded unpaid overtime of $29,945.69 plus liquidated damages of $29,945.69 (totaling $59,891.38) and nothing else. Plaintiffs, however, sought unpaid wages of $323,300.06 plus liquidated damages of $323,300.06 (totaling $646,600.12). Thus, Plaintiffs prevailed on just **9.26%** of their claims. Employing the instruction of *Farrar*, 506 U.S. at 114-115 (quoted on page 11 *supra*), the requested attorneys' fees must be reduced by **90.74%** ($122,683.22) leaving awardable fees, **if any**, of **$12,519.78.**[6]

---

[6] Given that fees attributed to the claim for collective action status of $25,866 are not recoverable, Plaintiffs have no entitlement to any fees. In conjunction with their Motion, Plaintiffs have not provided the Court with their fee agreements with the Troy Law Firm, so it is unknown how much the Troy Firm can expect from awarded damages.

### D.      Lodestar Assessment and Adjustments

### 1.      Unreasonable Hourly Rates

Plaintiffs' Counsel petition the Court to award the following hourly rates:

Mr. Troy - $550/hour

Mr. Schweitzer (**lead** trial counsel) - $350/hour

Ms. Kilaru - $200/hour

In *Williams v. NCO Financial Systems, Inc.,* C.A. No. 10-5766 at 7 (E.D Pa. 5/10/11), the court stated with respect to the reasonableness of a requested hourly rate that: "To determine a reasonable hourly rate, an attorney's customary billing rate is the proper starting point, supplemented by consideration of the hourly rate common in the market place and any relevant *Johnson* factors" citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("[W]e have consistently looked to the market place as our guide to what is 'reasonable'").

Particularly in view of Plaintiffs' failure to provide the Court with learned affidavits attesting to Plaintiffs' Counsels' skill and experience, and the prevailing market rates[7], it is prudent to use prior court findings and submissions, as well as the Community Legal Services hourly rate fee schedule[8] in order to demonstrate that these requested rates are above the prevailing market rates and excessive, even accounting for augmentation under the *Johnson* factors:

In *Morgan v. RCL Management, LLC,* C.A. No. 18-cv-00800 (E.D. Pa.  June 23, 2020) at 8, the most recent FLSA fee petition decision in this judicial district, the Court found that "fees based

---

[7] For use of affidavits in a fee petition, see *Robinson v. Equifax information, 560 F.3d 235, 245-46 (4th Cir. 2009) and Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987).

[8]  In *Williams, id.,* at 8-9, the Court noted that the fee schedule established by Community Legal Services ("CLS"), a Philadelphia-based organization, has been cited with approval by the Third Circuit Court of Appeals and the Eastern District of Pennsylvania as fairly reflecting prevailing market rates in Philadelphia. See, *Maldonado*, id.; *Peltzer v. City of Philadelphia,* C.A. No. 7-0083, 2011 WL 611817 *9 (E.D. Pa. 2011).

on a rate of $400 per hour [were] reasonable in light of the prevailing market rates in the community" (citing *Musa v. Soar Corp.*, C.A. No. 13-2847, 2015 WL 619615 at *3 (E.D. Pa. 2015) (approving a $400 hourly rate for Plaintiff's attorney in an FLSA action).

Further, in one of the Troy Firm's cases*, Zhang, id.,* cited by Plaintiffs herein (Certification, ECF No. 129-1 at ¶23), Plaintiffs cited cases in which the Troy Firm was involved and fees awarded. See, *Kang Wei Looi v. Meng Wang*, C.A. No. 13-cv-1684, 2014 U.S. Dist. LEXIS 1079217 at *8 (D.N.J. 2014) ($500 hourly rate to lead attorney and $350 per hour to associate attorney); *Santiago v. Lucky Lod Buffet, Inc.*, 2016 U.S. Dist. LEXIS 146089 at *4 (D.N.J. 2016) (hourly rates of $450 and $375). Also, in the Attorney's Certification in *Zhang*, attorney Kilaru requested and was awarded an hourly rate of $150).

Additionally, in Mr. Schweitzer's Certification in *Zhang,*(ECF No. 28 at ¶28), it is stated that Mr. Troy was previously awarded $400 per hour in the following cases*: Shen and Wang v. Number One Fresco Tortillas, Inc.,* C.A. No. 16-cv-02015 (S.D.N.Y.); *Singh v. Dany Restoration, Inc.*, C.A. No. 17-cv-03787 (S.D.N.Y. 2018). It is further stated by Mr. Schweitzer that he was awarded $250 per hour in *Singh* (ECF No. 28 at ¶35). Also, Ms. Kilaru requested and was awarded $150 per hour in *Singh.* (Schweitzer Certification ECF NO. 28 at ¶38; Troy Certification, ECF 129-1 at ¶87).

Moreover, the CLS fee schedule (*clsphila.org/about-community-legal-services/attorney-fees/*) effective 7/1/18, provides for attorneys with 2-5 years of experience an hourly rate range of $230-$275. Mr. Schweitzer who was lead trial counsel has 4 years of legal experience, yet seeks an hourly rate of $350.

Accordingly, an analysis of the foregoing indicates that Mr. Troy' hourly rate should not exceed $400; Mr. Schweitzer's hourly rate should not exceed the range of $230-$275; and, Ms. Kilaru's hourly rate should not exceed $150 for the compensable paralegal tasks, if any, she performed as described below.

17

2.      **Vague Descriptions, Duplication, Redundancy, Non-Compensable and Unnecessary Hours Requested**

"When awarding fees, a district court must 'decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary'". *Williams, id*., at 11 citing *Interfaith Community Org. v. Honeywell,* 426 F. 3d 694, 710 (3d Cir. 2005). The Court in *Williams, id*., continued "In response to the specific objections made by a party opposing the award of fees and costs, a court must conduct a 'thorough and searching analysis' to identify charges that should be excluded (citations omitted). Time that would not be billed to a client cannot be imposed on an adversary (citation omitted)".  **In that regard, it must be noted that there were 12 time filers who submitted time for this case even though it did not present novel or difficult issues or questions and required only a day and one half for trial.**

(a) **Vague Descriptions and Duplications**

Vague time descriptions in billing records that are submitted in support of a fee petition are a disfavored billing practice since they inhibit a court's review of the reasonableness of the time expended and such practice warrants a downward adjustment in the fee award. *See, Shattuck v. Harmon, id.; Shesko v. City of Coatesville,* 2004 U.S. Dist. LEXIS 16793 (E.D. Pa. 8/24/04); ***Williams v. NCO Financial Systems, Inc.,*** C.A. No. 10-5766 at 7 (E.D Pa. 5/10/11); *Rum Creek Coal Sales, Inc. v. PCS Nitrogen, Inc.,* 31 F.3d 169, 180 (4th Cir. 1997) ("We have frequently exhorted counsel to describe specifically the tasks performed, a practice which is especially necessary when we review an award **in a case where the plaintiff has not prevailed on all the claims.")** (Emphasis added); *Local 32B-32J Service Employees Int'l Union v. Port Authority of New York,* 180 F.R.D. 251 (S.D.N.Y. 1998) (reducing award by 20% for vague time entries such as "preparation for trial" and "research and draft papers").

The billing descriptions submitted by Plaintiffs (ECH No. 129-2) are replete with vague and "block billing" (lumping multiple task into single, undivided amounts of time) descriptions. In fact, Plaintiffs themselves have even admitted that the time records they submitted only identified **"the general subject matter of each time expenditure."** (Memorandum in Support at 5 (ECF No. 129-4 at 5)) (Emphasis added). It is problematic to use such vague time entries as "preparation for trial", research and draft papers", "legal research", "digest transcripts", and preparation for depositions" (in which the time biller did not even participate).

For example, some of Plaintiffs' Counsel time descriptions include such unacceptable descriptions of tasks as:

**Mr. Byun** – 3/21/17 "review file"

4/21/17 "review samples for opposing mtd"

4/21/17 "review client info"

4/26/17 "Review Amended Complaint"

5/16/17 "review case file, deadlines, database"

**Ms. Huang** – 5/2/17 "review Amended Complaint"


**Mr. Troy** – 10/15/18 "Respond to Reporter Inquiry"

10/17/18 "Reconnect with Chi"

3/5/19 "confer with local counsel"

7/23/19 "meeting re depositions w/ Aaron Schweitzer, Adam Dong" **[Duplication]**

**Ms. Kilaru** – 5/8/19 "review"

6/18/19 "review"

6/25/19 "review"

6/27/19 "review"

6/27/19 "review"

7/16/19 "review"

7/22/19 "review [63], [64]"

7/25/19 "review [66]"

9/4/19 "review [74]-[79]"

9/18/19 "review [85]"

9/19/19 "review [86]"

10/10/19 "review [89o]"

10/21/19 "review [91]-[92]"

10/22/19 "Review discovery file"

10/23/19 "review [101]-[107]"

10/27/19 "review [108]-[109]"

10/30/19 "review [110]"

10/30/19 "review [113]"

10/30/19 "review [112]"

11/04/19 "review [111]"

2/20/20 "review [125]"

3/5/20 "review [126]"

**Mr. Willard** – 5/28/19 "Review case status + procedural posture"

6/14/19 "Review Defs' document production to help prepare clients for deposition"

**Mr. Dong** – 7/23/19 "meeting Re depos w/JT, AS **[Duplication]**

8/26/19 "deposition prep client Xie, Junyi"

**Mr. Schweitzer**- 9/16/19 "confer with Local counsel"

9/16/19 "confer with Local counsel"

**Mr. Carvalho** – 10/4/19 "review [88]"

10/10/19 "review [89-90]"

10/21/19 "Test of VideoConference with court and
Tom((client in China)

10/21/19 "Test for VideoConference
with court and client-client failed to install app"

10/24/19 "Test with court – VideoConference"

12/16/19 "review [119], [120], [121]"

**Mr. Van Laar** – 9/9/19 "Review e-mails"

9/11/19 "Review and analyze additional records"

9/12/19 "Review e-mails re; discovery"

9/13/19 "Review and analyze deps of Defendants. Draft and
review and reply e-mails

9/19/19 "Review and analyze discovery requests. Conf:
GPL"

10/22/19 "Review e-mails"

10/25/19 "Review e-mails. Continued review trial exhibits.
Prep for trial"

**Mr. Lentz** – 9/12/19 "Review deposition transcripts"

10/7/29 "Conf Vince/review documents on damages/discuss trial
plan"

Accordingly, in light of Counsels' excessive and vague entries and occasional block

billing, there must be a substantial reduction of hours sought by the aforementioned attorneys.

**(b) Local Counsel**

In this case, Plaintiff seeks fees for tasks in which their local counsel unnecessarily duplicated efforts or prepared for tasks in which they did not participate. Initially, Defendants should not have to compensate Plaintiffs for time spent by substitute local counsel Bochetto & Lentz as a consequence of the internal disputes between the Troy Firm, *pro hac vice* counsel, and its initial local counsel selected by it.  Further, the submitted time records demonstrate that there was no recognizable division of responsibility between local counsel and the Troy Firm, or between local counsel *inter se,* except for trial related time entries. All of the 8.1 hours recorded by local counsel Gavin Lentz, who has requested the excessive hourly rate of $495, was spent in analyzing and reviewing materials and proceedings that not only duplicated work done by Troy Firm attorneys and prior local counsel but was similarly reviewed and analyzed by his own partner Vincent Van Laar. Not only was the review and analysis by Mr. Lentz unnecessary but it was work already done threefold by other counsel. Under such circumstances, Defendants should not have to compensate Mr. Lentz for tasks that had also been undertaken by at least three other attorneys (Messrs. Troy, Schweitzer and Van Laar). Accordingly, the 8.1 hours recorded by Mr. Lentz must be excluded from the Plaintiffs' fee requests.

As for the tasks recorded by Mr. Van Laar, the bulk of his recorded time also was spent in the review, analysis and update of materials which were duplicative of the tasks performed by Mr. Schweitzer, especially as they pertain to trial preparation. Although not substantively necessary, Mr. Van Laar as local counsel did not inappropriately attended trial as local counsel, even though he had no active participation in the trial itself.  But for his time spent at trial (15 hours), all other hours recorded by Mr. Van Laar were unnecessary and/or redundant. In fact Mr. Van Laar did not even sign most of the Plaintiffs' pretrial or post trial submissions

(See FCF Nos. 99, 109, 122, 127 and 129).

Accordingly, all of Mr. Van Laar's recorded time except for his 15 hours of trial time must be excluded from Plaintiffs' fee petition.

### (c) Paralegal and Administrative/Clerical Tasks

Most of the paralegal work recorded on the Troy Firm billing records were for purely clerical or administrative tasks which should be excluded from a fee award, if any. It has been said that purely clerical tasks are ordinarily part of a legal office's overhead (which normally is factored into the hourly rate and they should not be compensated for at all absent unusual circumstances. *See, e.g., Williams, id.* at n.7 ("Although the Court finds that the hourly rates billed by the paralegals are reasonable and that the paralegals performed work within the proper time-period, as explained below, the administrative work performed by the paralegals is not the type normally billed to a client and therefore will be excluded from the fee calculus"). The Court continued at 12:

> …Defendant has made a persuasive argument that 1.5 hours expended by paralegals on administrative tasks such as opening a file in a data base, mailing letters and copying documents to a CD should be excluded from Plaintiff's petition. Administrative tasks are not the type normally billed to a paying client and Plaintiff cannot recover for these costs. *See Spegon v. Catholic Bishop of Chicago,* 175 F. 3d 544, 552 (7th Cir. 1999) (finding the district court did not abuse its discretion by disallowing attorney's time spent on administrative tasks and striking nearly all of the paralegal's hours).

Other examples of excludable clerical tasks are the filing of documents with the Court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings, organizing documents, creating notebooks or files, assembling binders, emailing documents and making logistical phone calls. *See Two Men & A Truck, Inc.,* 128 F. Supp. 3d 919, 929-30 (2015).

Here, virtually all of the billings of Ms. Huang, Mr. Carvalho, Ms. Baker and Ms. Wolf, as well as a significant portion of the tasks of Ms. Kilaru described above, fall within these excluded categories of services.

According, no fees should be awarded for the tasks performed by these individuals.

### E.   <u>Non-Recoverable Costs</u>

Inexplicably relying upon 43 P.S. §333.133, rather than the governing federal statute at 28 U.S.C. §1920 (Taxation of Costs), Plaintiffs request to be reimbursed for costs in the amount of $6,875.58 (including local counsel) **having submitted no receipts**.  Substantial portions of the request for costs are not recoverable. Only those costs specifically mentioned in 28 U.S.C. S 1920 are taxable. *See, Crawford Fitting Co. v. J.T. Gibbons,* 482 U.S. 437, 442 (1987). Thus, the Court must deny all other costs requested. The following costs are taxable:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The following costs sought by Plaintiffs are not within Section 1920, and thus, are not taxable:

> Travel Mileage 1/11/19 - $225.80
> Travel Mileage  8/6/19 - $114.84
> Amtrak travel from New York City: 9/4/19 - $120; 10/7/19 - $181; 10/27/19 - $122;
> 10/29/19 - $122
> Trial Binders/Printing – 10/25/19 - $208.32
> Lodging (3 nights) 10/29/19 - $1055.43

**Non-reimbursable amount total - $1941.07.** Accordingly, the request for cost must be adjusted downward to **$4,934.51.**

### III.    <u>CONCLUSION</u>

Accordingly, for the reasons set forth herein, it is submitted that Plaintiffs' Motion for Attorneys' Fees and Costs must be stricken. Alternatively, Plaintiffs have not shown entitlement to any attorneys' fees, and in any event, any fees awarded should not exceed 7.8% of the requested $135,168 in fees, **or $10,545.84** and **$4,934.51** in reimbursable costs.

Respectfully submitted,

_/s/_ Vincent J. Pentima

Vincent J. Pentima (Pa. ID No. 18523)
**PENTIMA LAW FIRM PLLC**
30 Rock Hill Road
Bala Cynwyd, PA 19004
Telephone: (267) 670-2796
Facsimile: (610) 668-3306
Email: vjp@pentimalaw.com

*Counsel for Defendants*

Dated: June 29, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs has been served upon counsel of record on the below listed date via the Court's ECF system:

> Gavin P. Lentz, Esquire
> Vincent J. B.Van Laar, Esquire
> Bochetto & Lentz
> 1524 Locust Street
> Philadelphia, PA 19102
> Email: glentz@bochettoandlentz.com
>         vvanlaar@bochetto andlentz.com

> and

> John Troy
> Troy Law, PLLC
> 41-25 Kissena Boulevard Suite 119
> Flushing, NY 11355
> Email: johntroy@troypllc.com

> _/s/ Vincent J. Pentima_
> Vincent J. Pentima, Esquire (PA ID 18523)
> **Pentima Law Firm PLLC**
> 30 Rock Hill Road
> Bala Cynwyd, PA 19004
> Phone: (267) 670-2796
> Email: vjp@pentimalaw.com
> **Attorney for Defendants**

**Dated: June 29, 2020**